443 So.2d 1098 (1983)
STATE of Louisiana
v.
Angelo TROSCLAIR, III.
No. 82-KA-2014.
Supreme Court of Louisiana.
November 28, 1983.
Rehearing Denied January 27, 1984.[*]
*1101 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William R. Campbell, Beryl McSmith, Bridget Bane, Judith Lombardino, Asst. Dist. Attys., for plaintiff-appellee.
Servando C. Garcia, III, Frank J. Uddo, Basile J. Uddo, New Orleans, for defendant-appellant.
DENNIS, Justice.[*]
Defendant, Angelo Trosclair, III, was convicted following a bench trial of two counts of bribery of sports participants in violation of La.R.S. 14:118.1 and sentenced to four years at hard labor on each count. The sentences were suspended and defendant was placed on supervised probation for five years under the terms and conditions set out in La.C.Cr.P. art. 895. As a special condition of probation, defendant was ordered to serve ninety days in the parish prison and to pay a fine of twenty-five hundred dollars. Defendant appeals his conviction, and raises important questions of statutory and constitutional law.
On May 28, 1981, defendant was indicted in the Parish of Orleans for two counts of bribery of a sports participant. The grand jury accused defendant of offering and giving L.J. Durousseau, a jockey who rode in the fourth race at the Fairgrounds Racetrack on February 14, 1981, three hundred dollars with the intent to influence Durousseau's performance that day. The grand jury also accused defendant of giving another jockey who rode in the fourth race, Curtis Hale, six hundred dollars in exchange for Hale's promise not to finish first, second or third in that race.
The District Attorney of Orleans Parish sought the indictment after Messrs. Hale and Durousseau testified at an eviction proceeding instituted by the Fairgrounds Corporation against Mr. Larry Solow, an alleged gambler. During the civil inquiry and again at the criminal trial, Durousseau testified that he was approached by defendant at some point between 6:00 a.m. and 10:00 a.m. on February 14, 1981 while he was in the kitchen at the Racetrack. At this time defendant allegedly asked Durousseau to "take hold" of his mount in the fourth race. Durousseau testified that he agreed to stop his horse from running to win if defendant would pay him three hundred dollars. According to this witness, the money was given to him by the defendant several hours later while the two men were preparing for the race.
Curtis Hale testified that while he was sitting in the jockey's room prior to the fourth race defendant approached him, said "do you know what to do," and handed him a wad of one hundred dollar bills. Then, according to Hale, defendant warned him that the people supplying the money were dangerous and that he should not finish first, second or third. Hale further testified that he was aware of the danger as he had been accosted on the eve of the race by several unknown men who warned that a first, second or third place finish in the fourth race would result in him never touching another horse.

Assignments of Error Numbers One, Two and Three
Through his first and second assignments of error defendant argues that the *1102 trial judge erred in denying his motion in arrest of judgment which was based on grounds that defendant was not advised of and did not knowingly and intelligently waive his right to trial by jury. In his third assignment defendant argues that the trial court erred in cutting short the hearing on his motion in arrest of judgment.
In our opinion, the statement by defendant's attorney during a pretrial hearing that he planned to waive trial by jury, the minute entry showing such a waiver in defendant's presence in open court on the day of trial, and the defense counsel's testimony at the motion in arrest of judgment hearing that the defendant had been advised of his right to a jury trial, collectively, constitute adequate proof that defendant knowingly and intelligently waived his right to a trial by jury. See, State v. Phillips, 365 So.2d 1304 (La.1978); State v. Muller, 351 So.2d 143 (La.1977); State v. McCarroll, 337 So.2d 475 (La.1976).
The trial court fell into error, however, when it terminated the motion in arrest of judgment hearing without permitting the defendant to attempt rebuttal of the state's prima facie showing of a knowing and intelligent waiver of his right to jury trial. Accordingly, we will provisionally reject defendant's assignment of error and affirm his conviction, but we will remand the case for completion of the hearing, instruct the trial court to rule anew on the motion, and preserve the parties' rights to a further appeal from the ruling.

Assignment of Error Number Four
Through assignment of error number four defendant challenges four rulings by the trial judge, arguing that the trial judge committed reversible error in each instance. For the reasons discussed below, we conclude that defendant's fourth assignment of error is without merit.
A. Denial of Motion for Production of Grand Jury Testimony
Defendant moved pretrial for production and inspection of testimony of certain witnesses before the grand jury which indicted him. After a pretrial hearing, the trial court overruled the motion. At the hearing the defendant's attorney gave his reasons for the request to inspect the grand jury testimony: Certain witnesses may have perjured themselves before the grand jury; certain witnesses, some of whom were known to the defense counsel, may have given testimony favorable to the defendant before the grand jury. However, in his motion and argument, the defense counsel gave no specific facts to show the court that there was reason to believe these assertions.
It is a long established policy that the secrecy of grand jury proceedings should be carefully maintained. Many reasons for this have been stated. Secrecy helps to prevent the escape of prospective indictees by providing no forewarning to them of the investigation in progress; it insures that the grand jury investigation can proceed freely by protecting the grand jurors from outside influences and threats of reprisal; it serves to prevent the subornation of perjury and tampering of witnesses by targets of the investigation; it promotes free and open disclosure of information by witnesses without fear of retaliation; and finally, it acts as a shield by protecting innocent people under investigation from the injury to their reputations that could be caused by the disclosure of baseless accusations. However, the secrecy of grand jury proceedings is not absolute. The Supreme Court has stated that "in some situations, justice may demand that discrete portions of transcripts be made available for use in subsequent proceedings." Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211 at 219-20, 99 S.Ct. 1667 at 1673, 60 L.Ed.2d 156. 8 Moore's Federal Practice § 6.05.
Thus, Louisiana Code of Criminal Procedure Article 434 generally prohibits members of the grand jury and others present from divulging the testimony and other matters occuring during meetings but permits disclosure of grand jury materials in several situations: First, after the indictment, members of the grand jury and other *1103 persons present may reveal statutory irregularities in grand jury proceedings to defense counsel, the attorney general, the district attorney or the court; second, a court may direct disclosure of testimony given before the grand jury to show that a witness committed perjury in his testimony before the grand jury; third, attorneys for the state and for a person under investigation or indicted, are permitted access to witnesses for the purpose of discussing their testimony before the grand jury without court permission.
The difficulty encountered by the courts has been that on one hand, there is a strong public policy in favor of maintaining the secrecy of grand jury proceedings, while on the other hand, there is a strong policy in favor of openness in civil, as well as criminal, discovery and grand jury transcripts often provide "a storehouse of relevant fact." Dennis v. United States, 384 U.S. 855, 873, 86 S.Ct. 1840, 1851, 16 L.Ed.2d 973 (1966). Thus, the courts have been forced to strike a balance between these two competing forces.
The United States Supreme Court has stated that the indispensable secrecy of grand jury proceedings must not be broken except where there is a compelling necessity. While there may be instances in which a party's need for grand jury materials outweighs the need for continued secrecy, that need must be demonstrated "with particularity". That is, the party seeking disclosure must prove that without access to the grand jury materials the party's case would be "greatly prejudiced" or that an "injustice would be done." Furthermore, a general wholesale request for transcripts does not satisfy the requirement of demonstrative particularized need. United States v. Proctor & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). The Louisiana Supreme Court has followed basically the same approach in determining whether to permit discovery of grand jury transcripts. State v. Ates, 418 So.2d 1326 (La.1982); State v. Peters, 406 So.2d 189 (La.1981); State v. Martin, 376 So.2d 300 (La.1979).
The court must balance the continuing need for secrecy and the particularized need for disclosure in arriving at its determination. The party seeking disclosure has the burden of proving that the need for disclosure outweighs the continuing need for secrecy. If disclosure is permitted, it must be closely confined to the limited portion of the material for which there is particularized need. In any event, disclosure is left to the sound discretion of the trial court and will not be reversed in the absence of an abuse of that discretion. See Douglas Oil Company v. Petrol Stops Northwest, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979).
A general claim such as that made by Trosclair that disclosure of grand jury transcripts would reveal exculpatory evidence or evidence of perjury is usually not sufficient to satisfy the requirement of a showing of particularized need. See United States v. Short, 671 F.2d 178 (6th Cir. 1982). While the grand jury proceedings had been completed at the time of defendant's requested disclosure, there is always a continuing need for secrecy to promote free and open disclosure of information by witnesses before future grand juries without fear of retaliation. Because defendant failed to allege any specific facts showing that he would be greatly prejudiced or that an injustice would be done without disclosure, we cannot say that the trial court abused its discretion in finding that the defendant failed to prove a particularized need of disclosure which outweighed the need for secrecy and in disallowing disclosure.
B. Refusal to Permit Impeachment Through Evidence of Past Disciplinary Action Taken Against State Witnesses by Racing Officials.
Defendant appeals the trial judge's refusal to permit defense counsel to impeach Durousseau and Hale with their records as jockeys. The trial judge sustained the State's objection to defense counsel's attempt to use evidence of fines, *1104 suspensions and disbarments to impeach the credibility of these witnesses.
Defense counsel argues on appeal that questioning these witnesses about their racing records was proper impeachment of their credibility, La.R.S. 15:490, and that the trial judge's refusal to permit this line of questioning constitutes reversible error. Counsel further argues that he has a statutory right to expose the witnesses' possible bias, interest or corruption, La.R.S. 15:492, and that evidence of prior misconduct is relevant in as far as it might tend to establish that state officials could, if they so desired, prevent these two jockeys from returning to the track.
Each side has the right to impeach the testimony and credibility of every witness sworn on behalf of the other side. La.R.S. 15:486. The credibility of a witness must be attacked generally, however, and the inquiry must be limited to an examination or discovery of a witness's general reputation and cannot be expanded to include testimony concerning particular acts, vices or courses of conduct. La.R.S. 15:490, 491; State v. Stevenson, 390 So.2d 1292, 1294 (La.1980).
During his cross-examination of Durousseau, defense counsel asked, "have you ever been thrown off of a major race track for ..." The state objected to the question as improper impeachment and defense counsel explained to the trial judge that he desired to impeach Durousseau through evidence of prior rulings by the State Racing Commission against Durousseau. The trial judge properly sustained the State's objection as counsel was attempting to introduce evidence of specific acts of misconduct which, as we noted above, is inadmissible for impeachment purposes.
Defense counsel argues on appeal, however, that evidence of prior misconduct by Hale and Durousseau which exposes them to possible disciplinary action by racing officials is relevant to their motives for testifying and is, therefore, admissible under La.R.S. 15:492.
A defendant has a constitutionally and statutorily protected right to expose through cross-examination facts tending to show that a witness is biased, has an interest in the outcome of the trial, or has been corrupted by the State. La.R.S. 15:492; Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); State v. Kellogg, 350 So.2d 656 (La.1977). Furthermore, this court has permitted counsel to inquire into the possibility of civil liability, which would include disciplinary action by the State Racing Commission, when such facts indicate that the witness has an interest in the criminal case. State v. Kellogg, supra at 658 and the jurisprudence cited therein.
Defendant was permitted by the trial judge to introduce evidence of the fact that both Hale and Durousseau had been granted immunity from criminal prosecution for crimes in which they may have participated related to race fixing during the 1980-1981 season and that these grants were revocable if these men did not "cooperatively testify" before the grand jury and at trial. During the cross-examination of Durousseau defense counsel first elicited testimony to the effect that Durousseau was under supervision at the time of trial and that the suspension proceedings had begun the February 14th race. The court was informed that Durousseau was permitted to ride in that race because his case was on appeal. The trial judge also heard testimony that the State Racing Commission had agreed to honor this grant in Durousseau's case and that the two jockeys received $785.00 a month for "living expenses" from the Commission for a short period of time prior to trial. Furthermore, Curtis Hale testified that while he was still licensed at Jefferson Downs, he could not ride there and defense counsel was repeatedly allowed to question both witnesses about possible threats or promises by state officials.
The trial court did not commit reversible error. Defendant was permitted to introduce evidence of particular acts establishing these witnesses' possible bias, interest or corruption. The only evidence which the *1105 trial judge refused to admit was of suspensions and fines imposed prior to the February 14, 1981 race. These particular facts were not sufficiently related to this case to show bias, interest or corruption with regard to the witness's present testimony.
C. Refusal to Permit Counsel for Defendant to Qualify Either Carl Daigrepont or Dr. Rob Hartwick as Experts in Field of Horse Racing.
Defense counsel attempted to qualify Mr. Carl Daigrepont, the custodian of the jockey's room at the Fairgrounds, as an expert in horse racing. Mr. Daigrepont, who was a jockey for seven years, estimated that he had seen thousands of race films in his thirty-two years at the track, but admitted that he did not analyze films for the race track. Dr. Rod Hartwick, a veterinarian, was also offered as an expert in horse racing by the defense. Under cross-examination the prosecutor emphasized that Dr. Hartwick was a patrol judge, an official who viewed races for any irregularities, approximately twenty-five years ago and that since that time he had dedicated himself to the practice of veterinary medicine. The trial judge refused to qualify either of the witnesses as experts in horse racing and would not allow them to view films of the fourth race and testify as to any irregularities they may or may not have seen.
The defense was attempting to prove, through the testimony of these two witnesses, that nothing unusual happened during the fourth race on February 14, 1981 and that all the jockeys rode to win. Thus the witnesses were not called to testify about an element of the crime charged, but to offer indirect, circumstantial evidence that no crime occurred.[2]
Defendant strenuously argues that observing races for irregularities is not a matter of common knowledge and that the opinions of experts are, therefore, admissible at trial. La.R.S. 15:464. The record before us indicates, however, that the trial judge did not sustain the state's objection to defense counsel's attempt to qualify these two witnesses as experts on the grounds that expert testimony was unnecessary or inappropriate. On the contrary, Dr. Hartwick was not allowed to testify as an expert because the trial judge agreed with the prosecution that the defense had failed to properly qualify him as an expert in the field of horse racing. As to Mr. Daigrepont, there is some confusion as the trial judge did not expressly rule on his competency. We are convinced, however, that the trial judge implicitly rejected Mr. Daigrepont as an expert in horse racing.
Before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court. La.R.S. 15:466. It is a well settled rule that a trial judge is vested with wide discretion in determining the competence of an expert witness. State v. Michel, 422 So.2d 1115 (La.1982). Competence of an expert is a question of fact to be determined within the sound discretion of the trial judge; his rulings on the qualification of expert witnesses will not be disturbed in the absence of manifest error. State v. Stucke, 419 So.2d 939 (La. 1982); State v. Drew, 360 So.2d 500 (La. 1978). As we are convinced that the trial judge's rulings are not manifestly erroneous, they will not be disturbed.
On cross-examination Mr. Daigrepont testified that he did not routinely view films for the race track, never viewed them in a professional capacity and was employed as the custodian of the jockey's *1106 room. Dr. Hartwick did have more impressive credentials but his skills in the field had not been employed in the past twenty-five years and he was not responsible for making an analysis of the races at the Fairgrounds. Considering the wide discretion given to the trial judge it cannot be said that he committed reversible error.
D. Allowing State's Rebuttal Witness to Testify That He Had Viewed the Film and Had Detected Irregularities
During rebuttal the State recalled Charles LeBlanc, a stewart at the Fairgrounds, who testified, over objections by defense counsel, that he had viewed the film of the fourth race and had noticed irregularities in the running of the race. LeBlanc testified that he saw several horses go wide through the turn at the head of the stretch, opening a path for Bye Gem, the winning horse.
In brief, counsel for defense asserts that this rebuttal testimony was improper as the state was reserving part of its case-in-chief, State v. Gatlin, 396 So.2d 1294 (La.1981), and because the result of the trial judge's ruling was that only the state's version of the race was presented to the trier of fact. The record before us simply does not support these assertions, as we find that through LeBlanc's testimony the state properly rebutted earlier testimony by Anthony Rini, a defense witness, that he had viewed the race films four or five times and had not noticed any irregularities.
Rebuttal evidence is that which is offered to explain, repel, counteract or disprove facts given in evidence by the adverse party. La.R.S. 15:282; State v. Huizar, 414 So.2d 741 (La.1982). LeBlanc's testimony was, by definition, rebuttal evidence.

Assignment of Error Number Five
Defendant contends, through his fifth assignment of error, that the trial court erred in denying his motion for a new trial because the evidence is not sufficient to support a finding of guilt beyond a reasonable doubt.
The Due Process Clause of the Fourteenth Amendment requires this court to review the evidence upon which a criminal conviction is based to determine whether it is minimally sufficient. State v. Graham, 422 So.2d 123 (La.1982). A defendant has not been afforded due process, and his conviction cannot stand, unless, viewing the evidence in the light most favorable to the prosecution any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Applying this standard to the instant case, we conclude that the evidence is constitutionally sufficient and supports the convictions of the defendant.
Defendant was found guilty of two counts of bribery of a sports participant. La.R.S. 14:118.1. Bribery of a jockey, one of the professions within the ambit of the statute, is the giving or offering to give, directly or indirectly, anything of apparent present or prospective value to any jockey with the intent to influence him to lose or cause to be lost, or corruptly to affect or influence the result of a horse race or to limit his mount or beast's margin of victory in any race.
The state presented two witnesses who testified that they had been offered, and had actually received, significant sums of money in exchange for their promises not to finish first, second or third in the fourth race at the Fairgrounds on February 14, 1981. The testimony of the two jockeys, Hale and Durousseau, undoubtedly provided an adequate basis for a finding of guilt beyond a reasonable doubt by a rational trier of fact. The defendant claims, however, that a guilty verdict could not properly be founded upon the testimony of these witnesses as their credibility was destroyed. But it is not our function to assess credibility or reweigh the evidence. Our review for minimal constitutional sufficiency of evidence is a limited *1107 one which ends upon our finding that the rational trier-reasonable doubt standard has been satisfied.
The defendant's conviction and sentence are affirmed, but the case is remanded for further proceedings consistent with this opinion.
AFFIRMED AND REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[*] Calogero and Lemmon, JJ., would grant a rehearing.
[*] Bailes, J. sitting for Justice Marcus.
[2] The crime of bribery of a sports participant is the giving, or offering to give anything of value to any jockey participating or expecting to participate in any horse race with the intent to influence him to lose or corruptly to affect or influence the results of a race. La.R.S. 14:118.1. The state is, therefore, not burdened with proving that the race was actually fixed or corrupted and defense counsel was not, as he argued in brief, attempting to qualify these witnesses as experts in an effort to elicit testimony about an element of the crime charge. Furthermore, we note that Durousseau testified at trial that he renegged on his agreement with defendant and rode to win.