486 So.2d 995 (1986)
STATE of Louisiana, Appellee,
v.
Richard E. COLEMAN and Larry Morris, III, Appellants.
No. 17621-KA.
Court of Appeal of Louisiana, Second Circuit.
April 2, 1986.
Rehearing Denied April 30, 1986.
*997 Indigent Defender Office by Donald R. Minor and Richard E. Hiller, Shreveport, for appellant Richard E. Coleman.
Booth, Lockard, Politz, LeSage & D'Anna by Bennett L. Politz, Shreveport, for appellant Larry Morris, III.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., Shreveport by Powell Layton, James G. Cowles, Jr. and Tommy J. Johnson, Asst. Dist. Attys., for appellee.
Before JASPER E. JONES, FRED W. JONES, Jr. and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
Defendants Coleman and Morris were convicted by a jury of armed robbery, two counts of aggravated rape, and aggravated crime against nature. Each defendant was sentenced to 25 years for armed robbery, life for each count of aggravated rape, and 15 years for aggravated crime against nature. All were without benefit of probation, parole or suspension of sentence. The sentences were to run concurrently with the exception of the 25 year sentence for armed robbery, which was to be served consecutive to the others.
Defendant Coleman appealed his conviction, reserving 19 assignments of error, 9 of which have not been argued in brief. Defendant Morris appealed his conviction, reserving 16 assignments of error, 6 of which have not been argued in brief. Assignments of error neither argued nor briefed are considered abandoned. State v. Foley, 456 So.2d 979 (La.1984); State v. Brockett, 471 So.2d 867 (La.App.2d Cir. 1985). After combining identical assignments of error, eight issues are presented on appeal.
Factual Context
On September 11, 1983, shortly after midnight, the victim stopped her vehicle at a railroad crossing because of a passing train. While stopped she was approached *998 by the defendants. A toy pistol was produced and the defendants got into the vehicle on either side of the victim. The car was driven to a nearby wooded area where the defendants repeatedly raped and then robbed the victim.

ISSUE NO. 1
Did the trial court err in not allowing defense counsel to question prospective jurors during voir dire as to whether they believed a defendant had to produce evidence of his alibi if he claimed not to be the offender, who the defendants would most likely call upon as alibi witnesses should they decide to present such a defense, and what were the jurors' opinions as to the effect of stress upon human perception and memory?
Prospective jurors were asked:
The fact that someone does not come forth with an alibi, do you think you would hold that against them?
The trial judge interrupted:
Well, now, let me makeyou're getting a little close to the case, the facts of the case, [defense counsel] and we're not to commit the people in advance on any particular decision, on any particular point.
Another panel of prospective jurors were asked:
Do you have any opinion as to how a stressful situation affects a person's ability to perceive something or remember something? Do you have any preconceived notions about the effect of a stressful situation upon a person?
Do you believe or have any opinion that under any given circumstance that if a person is acting under stress that that necessarily means that a person is going to be more accurate or less accurate in whatever they perceive or remember about that situation?
In sustaining an objection to these questions, the trial judge stated:
The reason is, that it's an attempt to commit the jury in advance in the decision in the case.
The assistant district attorney asked another panel of prospective jurors:
There's been talk about stressful situations and people remembering things, do you understandor can you recall experiences in your own life, stressful situations or traumatic events, do you think that you would be able to remember details of such events?
The trial judge sustained the defense counsel's objection to this question as well.
The accused shall have the right to full voir dire examination of prospective jurors. La.Const.Art. I, § 17 (1974). The court, the state, and the defendant shall have the right to examine prospective jurors. The scope of the examination shall be within the discretion of the court. CCrP Art. 786.
The purpose of the voir dire examination is to test the competence and impartiality of prospective jurors and may not serve to pry into their opinions concerning evidence to be offered at the trial. State v. Clark, 325 So.2d 802 (La.1976). Questions which seek the prospective juror's opinion concerning evidence to be presented at trial or seek to obtain a pre-trial commitment on the issues based on facts which may be established at trial are not permitted. State v. Dickinson, 370 So.2d 557 (La.1979). The scope of the voir dire examination is within the sound discretion of the trial judge and his rulings thereon will not be disturbed in the absence of a clear abuse of discretion. State v. Watson, 449 So.2d 1321 (La.1984).
In State v. Robinson, 404 So.2d 907 (La. 1981), the defense attempted to question prospective jurors concerning the effect of a traumatic experience on identifying a person. The trial court sustained the State's objection to this question:
You can understand that a person who has been through a traumatic experience like [that] might have trouble identifying a person?
The court found the subject matter was not relevant for purposes of voir dire examination since it neither tested the prospective *999 juror's competence or impartiality, but was more suited to argument.
In viewing the voir dire examination in its entirety, no prejudice to the defendants is shown here. Watson, supra. The trial judge did not abuse his discretion in disallowing these questions. Neither side was permitted to commit the prospective jurors to an opinion on evidence to be admitted at trial.

ISSUE NO. 2
Did the trial court err in allowing the State to refer to the testimony of Mark Turner, the victim of an armed robbery perpetrated by these same defendants in the approximate area and at the approximate time of the assault on the victim in this case, during its opening statement, and was the defendants' right to cross-examination erroneously curtailed when the trial court allowed Mark Turner to testify?
In overruling defense counsel's objection to the assistant district attorney's reference to Mark Turner in his opening statement, the court ruled:
Mark Turner would be closely related to time and place on this circumstances, [sic] and should be admissible. It is notit should not encompass the commission of any other offense.
An accused is entitled to confront and cross-examine the witnesses against him. La.Const. Art. I, § 16; La.R.S. 15:273.
In State v. Hicks, 180 La. 281, 156 So. 353 (1934), the court held it was permissible to prove a collateral offense for the purpose of showing that shortly after or before the accused was in the vicinity of the place where the crime charged was committed.
In State v. Johnson, 111 La.935, 36 So. 30 (1904), the court held it was appropriate for the state to prove that, shortly after or before the event, the defendants were in the vicinity of the place where the crime charged was committed, and if, when seen, they were engaged in the commission of another crime, evidence otherwise admissible was not to be excluded on that account.
Great care was taken here to prevent evidence of this other crime committed by these defendants from being presented to the jury. The witness could place the defendants in the area at the approximate time of the incident involving the victim. Defense counsel were not limited in their cross-examination as to the identification of the defendants by the witness.

ISSUE NO. 3
Did the trial court err by allowing Detective Bill Wilson and the victim to testify for the state concerning what happened at a physical line-up rather than admitting the cassette tape recording of the line-up, thus violating the best evidence rule?
The best evidence which from the nature of the case must be supposed to exist, and which is within a party's control, must be produced. La.R.S. 15:436. The best evidence of a tape-recorded statement is the unaltered tape. State v. Auzenne, 305 So.2d 507 (La.1974); State v. Sterling, 453 So.2d 625 (La.App.1st Cir.1984). The accurate transcription of the tape is better evidence than oral testimony based on the recollection of a witness to the statement. State v. Sterling, 444 So.2d 273 (La.App. 1st Cir.1983).
The "best evidence" rule is to be applied sensibly and with reason. State v. Dilworth, 358 So.2d 1254 (La.1978); State v. Cody, 446 So.2d 1278 (La.App.2d Cir. 1984). Absent a showing of prejudice to defendant, a conviction will not be reversed on the ground that the best evidence was not produced. State v. Moore, 419 So.2d 963 (La.1982); State v. Gaskin, 412 So.2d 1007 (La.1982).
Defense counsel questioned both the victim and Detective Wilson about the live line-ups. Only later, after the assistant district attorney asked the police officer to describe in detail the procedure involved, did they object. Defense counsel were allowed to introduce into evidence the audio cassette recordings of the live line-ups in which the victim identified the defendants. *1000 When the victim was called upon to explain certain comments she made during the line-up, defense counsel again objected. The trial judge properly overruled these objections.

ISSUE NO. 4
Did the trial court err in refusing to allow expert testimony on the fallibility of human perception and memory?
The defense proposed Dr. James W. Baerwaldt as an expert on eyewitness identification. Dr. Baerwaldt has a Ph.D. in Experimental psychology and a degree in mathematics. He has attended a number of meetings in which eyewitness identification has been the subject of discussion.
The trial judge determined nothing in his list of qualifications indicated Dr. Baerwaldt had any expertise in eyewitness identification and excluded his testimony. The trial judge, while expressing doubt that eyewitness identification is even a proper subject for expertise, stated:
If this was a matter of short endurance, that might be more reason to do to allow that testimony. But in this case, if we recite the lengthywhether it's an hour or an hour and a half, or whatever it was she was with the perpetrators of these offenses, she certainly was in close contactin this case, you could say intimate contactwith the individuals, where she had an opportunity to see in the lightin the headlights, and had an opportunity to hear to assist in her being able to recognize the individuals involved.
On questions involving a knowledge obtained only by means of a special training or experience the opinions of persons having such special knowledge are admissible as expert testimony. La.R.S. 15:464. The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion. Before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court. La.R.S. 15:466.
In State v. Stucke, 419 So.2d 939 (La. 1982), refusal to allow an experimental psychologist to testify concerning the quality of an identification was held not an abuse of discretion, in view of the substantial risk that the potential persuasive appearance of an expert witness would have greater influence on the jury than the other evidence presented during the trial.
Competence of an expert witness is a question of fact to be determined within the sound discretion of the trial judge; his rulings on the qualification of expert witnesses will not be disturbed in the absence of manifest error. State v. Trosclair, 443 So.2d 1098 (La.1983); State v. Williams, 431 So.2d 885 (La.App.2d Cir.1983).
The trial judge did not abuse his discretion in refusing to allow this expert witness to testify. The prejudicial effect of such testimony outweighs its probative value because of the substantial risk that the potential persuasive appearance of the expert witness will have a greater influence on the jury than the other evidence presented during the trial. Such testimony invades the province of the jury and usurps its function.

ISSUE NO. 5
Did the trial court err in sustaining the state's objection to defense counsel's questioning of Laura Johnson, an expert in forensic serology and specifically in hair identification, regarding whether she could say the hair found in the victim's panties matched the defendant's hair beyond a reasonable doubt?
This question is not properly within the realm of the witness's expertise. It seeks to elicit a response which calls for a judgment the jury should make. It is a matter which was directly at issue and was properly objected to as invading the province of the jury. While a jury is entitled to the aid of experts in determining the existence or nonexistence of facts not within common knowledge, an expert must not take the place of the jury by expressing his *1001 opinion as to an ultimate fact. State v. Nelson, 306 So.2d 745 (La.1975).

ISSUE NO. 6
Did the trial court err in refusing to grant a mistrial on the grounds that, during its closing argument, the state commented on the defendant's failure to present alibi evidence?
During closing argument, the prosecuting attorney stated:
Detective Bill Wilson who handled the overall investigation, testified. He said Richard Coleman told the police, after being advised of his rights several times, he turned himself inI submit he turned himself in, because he was counting on Patricia [now his ex-wife] to be his alibi. And he told the police, "Yes, my wife is my alibi, I came home at 9:00 P.M. I had been playing basketball all day." He tells you, "Well, I was playing basketball with Joe Lewis Watson." Well, where is he?
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. CCrP Art. 774. Where a defendant alleges that he has an alibi but fails to produce an alibi witness, the prosecutor may refer to this failure by defendant during closing arguments. State v. Smith, 357 So.2d 798 (La.1978).

ISSUE NO. 7
Did the trial court err in denying defendant's motion for mistrial on the basis that the closing argument made by the prosecution was an appeal to the emotion and sympathy of the jury and, therefore, not within the scope of proper closing arguments?
In closing arguments, the assistant district attorney stated:
Remember the victim, [name omitted]. She's not going to forget that night. She's not going to forget those faces. Later on, he reiterated:
Now is the time to remember [the victim].
Defense counsel objected after the assistant district attorney finished his closing argument. The trial judge refused to grant a motion for mistrial and opted to admonish the jury to disregard the prejudicial statements. In his jury instructions, the trial judge stated:
And you are not to be influenced by sympathy or passion. And any remarks that you determine were intended for that purpose should not be considered by you.
Later on, the trial judge added:
You are not to be influenced by sympathy, passion, prejudice, or public opinion.
Defense counsel's objection to the prosecutor's rebuttal argument was timely even though not raised until after the prosecuting attorney had concluded his closing argument. State v. Lee, 346 So.2d 682 (La.1977).
The argument shall not appeal to prejudice. The state's rebuttal shall be confined to answering the argument of the defendant. CCrP Art. 774.
The court shall promptly admonish the jury to disregard a remark or comment made during argument within the hearing of the jury when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant in the mind of the jury. The court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial. CCrP Art. 771. Improper closing argument does not constitute reversible error unless the court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Knighton, 436 So.2d 1141 (La.1983).
The trial judge properly instructed the jurors to disregard such appeals for sympathy. We are not thoroughly convinced the remarks influenced the jury and contributed to the verdict.

*1002 ISSUE NO. 8
Did the trial court err when it refused the following specially requested jury charges by the defendants?
Defendant Coleman requested the following special jury charges:

1.
In weighing the evidence, you may determine that two different reasonable conclusions may be drawn from the evidence. Whenever facts, testimony or other evidence is such that two different conclusions may reasonably be drawn therefrom, one conclusion favorable to the defendant and the other conclusion not favorable to him, I charge that it is your duty to draw the conclusion that is favorable to the defendant.

3.
When the spouses have been living separate and apart continuously for a period of one year or more either spouse may sue for and obtain a judgment of absolute divorce. (La.R.S. 9:301).
Defendant Morris made the following special jury charge request:
One of the most important issues in this case is the identification of the defendant as the perpetrator of the crime. The Government has the burden of providing identity, beyond a reasonable doubt. It is not essential that the witness himself be free from doubt as to the correctness of his statement. However, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you can convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.
Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.
In appraising the identification testimony of a witness, you should consider the following:
(1) Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?
Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had had occasion to see or know the person in the past.
(2) Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection? You may take into account both the strength of the identification, and the circumstance under which the identification was made.
(3) You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see the defendant, as a factor bearing on the reliability of the identification.
(4) Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.
I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of providing beyond a reasonable doubt the identify of the defendant as the perpetrator of the crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty.
A requested special charge need not be given if the substance of the requested charge is included in the general charge. CCrP Art. 807. The following *1003 instructions were given in the trial judge's "Charge to the Jury":
In considering the evidence, you must give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence.
The State's burden of proof in connection with the charged offenses, include not only establishing that each was committed, but also that they were committed by the defendant. Therefore, even though you may find that the State has proven the commission of the crimes charged by some person or persons, you must find the defendant not guilty if you are not convinced beyond a reasonable doubt that he is the offender.
As jurors, you alone shall determine the weight and credibility of the evidence. As the sole judges of the credibility of the witnesses and of the weight of their testimonythe weight their testimony deserves, you should scrutinize carefully the testimony given and the circumstances under which the witnesses testified. In evaluating the testimony of witnesses, you may consider their ability and opportunity to observe and remember the matter about which they testified, their manner while testifying, any reason they may have for testifying in favor of, or against the State or the defendant, and the extent to which the testimony is supported by or contradicted by, other evidence.
The instructions given to the jury more than adequately cover the information contained in Coleman's "Requested Jury Charge No. 1" and Morris' "Proposed Jury Instruction".
When propositions of law, even if correct, have no bearing upon the facts of the case, the trial judge commits no error in refusing to charge them. State v. Capaci, 179 La.462, 154 So. 419 (1934); State v. Marsalise, 172 La.796, 135 So. 361 (1931). Coleman's "Requested Jury Charge No. 3" is irrelevant to the case at hand.
Decree
For the foregoing reasons we find no merit in any of the assignments of error reserved by the defendants. Consequently, we affirm their convictions and sentences.