BROWN, Judge.
Defendant, Leon Barnes, Jr., appeals after being indicted, tried and convicted for the second degree murder of Edward Davis. A mandatory life term without benefit of parole, probation or suspension of sentence was imposed. Finding no merit to this appeal, we affirm.
On March 8, 1990 defendant and the victim, who were long time acquaintances and neighbors, went to a local bar. They had several drinks outside the bar and then went inside to shoot pool. Sylvester Barnes, defendant’s brother, came into the bar and the victim made some comments about the two brothers sharing the same woman. An argument followed and the victim slapped defendant. Defendant declared that he would kill anybody who slapped him. Others separated the two men and they left the bar.
Defendant and victim went to their respective homes which were next door to each other. The victim obtained a shotgun from his house and went outside placing the weapon in his truck. At this time defendant approached the victim at the truck and the two exchanged words. According to Clara Davis, the victim’s wife, defendant was carrying a sawed-off shotgun and shot her husband in the chest. Witnesses testified that defendant left the scene with a short barrel weapon and gave it to another person. A sawed-off shotgun was never recovered.
Defendant then went from the scene to the Sheriff’s office and announced that he had killed the victim in self-defense. He said he shot the victim with his (defendant’s) gun. Defendant asked the deputies for protection because he feared retribution from the victim’s family. When ordered by deputies to empty his pockets, defendant produced a spent 12 gauge 00 buckshot hull which he said was used to kill the victim. Later, defendant made a recorded statement claiming that he was unarmed when he confronted the victim at the truck. He stated that the victim took a shotgun from the truck and in the scuffle over the gun it accidentally discharged striking the victim in the chest. Defendant said the spent 12 gauge hull hit his foot. A number of weapons were recovered in the investigation of the shooting. The investigating officers did not find a shotgun in the victim’s truck but did find a .22 caliber revolver with five live rounds and one expended hull.
The victim’s family was upset and their agitation caused turmoil at the scene. Apparently the victim’s brother, Ray Davis, removed a 20 gauge single barrel shotgun from the victim’s truck and shot it at least once. This shotgun was recovered from behind the victim’s house. A second 20 gauge single barrel shotgun was recovered from under the bed of Betty Britton’s house. Ms. Britton testified that Jerry Davis had brought the gun into her house and placed it under the bed. Witnesses had told the police that Jerry Davis had retrieved the gun from behind the victim’s home. The police suspected that this shotgun was used to shoot the defendant’s mobile home after he had departed the scene. A .22 caliber rifle was recovered from the victim’s father at the scene.
In addition to the above weapons, a long barrel pump 12 gauge shotgun loaded with bird shot was recovered from defendant’s *1111 trailer just inside the door. A forensic firearm identification expert, Jim Churchman, testified that the pellets and wadding obtained from the victim’s body were 12 gauge 00 buckshot. Churchman confirmed that the components of the spent 12 gauge hull taken from the defendant at the sheriffs office were the same type as the pellets and wadding recovered from the victim. After examining firing marks, Churchman concluded that the spent 12 gauge hull was fired from a 12 gauge shotgun but not the one recovered from inside defendant’s home.
In defendant’s first assignment of error he asserts that no rational juror could have found him guilty of second degree murder. Our standard to review whether the evidence was sufficient to convict requires that we consider the evidence in the light most favorable to the prosecution to determine if a rational juror could have found all the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Edwards, 400 So.2d 1370 (La.1981); State v. Captville, 448 So.2d 676 (La.1984); State v. Blake, 575 So.2d 906 (La.App. 2d Cir.1991).
' Our authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra., and we accord great weight to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (1987).
Clara Davis’ testimony that defendant shot the victim with a sawed-off shotgun while the victim’s gun was still in his truck was sufficient to repudiate either defendant’s self-defense or accidental discharge theory. Mrs. Davis’ testimony as to the defendant’s possession of a sawed-off shotgun was corroborated by other witnesses. Other witnesses testified to seeing defendant leave the scene with what appeared to be a short shotgun under a blanket or jacket. Gertrude Morris identified defendant as leaving with a shotgun and testified to seeing the victim’s gun still in the truck after the shooting. Cora Mae Jones testified that she saw defendant give a rifle or something to Rickey Freeman and tell him to get rid of it. Freeman’s denial was laden with inconsistencies and not credible.
Deputy Jerry Wellman testified that the defendant gave him a 12 gauge 00 buckshot hull and told him that it was the shell used in the killing. The spent 12 gauge hull was consistent with the pellets and wadding recovered from the victim’s body. None of the guns recovered during the investigation could have fired the spent shell defendant gave to the deputy. Further, defendant’s initial self-defense version contradicted his later accidental discharge claim.
When the entirety of the record is considered in the light most favorable to the prosecution, a rational trier of fact could easily have found defendant guilty of second degree murder. Jackson, supra.
Defendant further contends that the trial court wrongly disallowed the testimony of Ray Jobe. Defendant misinterpreted the ruling of the trial court. The court did not deny the admissibility of the testimony; rather, it ruled that Ray Jobe was not qualified as an expert.
THE COURT: Very well. I tell you what I’m going to do. I’m going to— I’m not going to qualify him as an expert. It’s up to you as to how you can try to get it in, but I’m not going to qualify him as an expert, if you follow me now.
MR. CRIGLER: Yes, ma’am.
MR. THOMAS: Okay.
THE COURT: This man can testify as to just what he did, that’s a whole different matter. I just don’t see — you see, I don’t think he has to form an opinion as an expert.
Although the court expressed its intent to allow Jobe to testify, “as to just what he did”, defense counsel excused the witness and did not request fact testimony.
Article 702 of the Louisiana Code of Evidence provides as follows:
*1112 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.
The trial judge is vested with great discretion in determining whether a witness will be qualified as an expert. This court explained the standard in State v. Honeyman, 565 So.2d 961, 966 (La.App. 2d Cir.1990):
Before any witness can testify as an expert, his or her competence must be established to the satisfaction of the court. State v. Trosclair, 443 So.2d 1098, 1105 (La.1983), cert. dismissed, 468 U.S. 1205, 104 S.Ct. 3593, 82 L.Ed.2d 889 (1984); State v. Watson, 449 So.2d 1321, 1331 (La.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985). Competence of an expert is a question of fact to be determined within the sound discretion of the trial judge and his rulings on the qualifications of experts will not be disturbed in the absence of manifest error, that is, unless they are clearly wrong. State v. Sherer, 411 So.2d 1050, 1054 (La.1982), on appeal after remand, 437 So.2d 276 (La.1983); State v. Trosclair, supra, at p. 1105.
The test of competency of an expert is his knowledge of the subject about which he is called upon to express an opinion. State v. Sherer, supra, at p. 1054; State v. Ruple, 437 So.2d 873 (La.App. 2d Cir.1983); and State v. Coleman, 486 So.2d 995 (La.App. 2d Cir.1986), writs denied, 493 So.2d 633, 634 (La.1986). A combination of specialized training, work experience, and practical application of the expert’s knowledge can combine to demonstrate that a person is an expert. See both State v. Smith, 448 So.2d 778, 780 (La.App. 2d Cir.1984) and State v. Breckenridge, 506 So.2d 799 (La.App. 1st Cir.1987). A person may qualify as an expert based on experience alone. State v. Smith, supra.
Jobe allegedly would have testified about tests he conducted to demonstrate the pattern resulting from a shotgun fired at different distances. By utilizing a photograph of the entrance wound along with test patterns made by pellets fired from a shotgun, the defense hoped to prove that the victim’s wound came from a weapon fired at close range and thus consistent with a struggle over the shotgun.
Jobe became a gunsmith after completing a correspondence course. He had never received' training in forensic science, firearms identification or ballistics. He had never testified as an expert in any area. He worked as a sales clerk at a hardware store and in his own gun repair business. It was within the judge’s discretion to find that Jobe was not an expert as submitted.
The trial court ruled that Jobe could testify about his experiments. The actual patterns from Jobe’s test firings compared with the photograph of the entry wound would have accomplished the alleged purpose of the defense. Any prejudice, therefore, created by Jobe not testifying was brought about by defense counsel’s decision not to question the witness rather than his failure to be qualified as an expert.
In his third and final assignment of error, defendant urges the trial court erred in allowing the District Attorney to use all his peremptory challenges to exclude blacks from the jury. This assignment was neither briefed nor argued on appeal and is therefore not considered. State v. Domingue, 298 So.2d 723 (La.1974); State v. Williams, 338 So.2d 672 (La.1976); State v. Schwartz, 354 So.2d 1332 (La.1978); URCA, Rule 2-12.4.
Finding no merit to defendant’s claims we affirm the conviction.
AFFIRMED.