LOVE, J.,
dissents and assigns reasons
|,1 respectfully dissent from the majority as it relates to the introduction of Conrad Jackson’s grand jury testimony.
“[T]he secrecy of grand jury proceedings is not absolute.” State v. Troselair, 443 So.2d 1098, 1102 (La.1983). “The Supreme Court has stated that ‘in some situations, justice may demand that discrete portions of transcripts be made available for use in subsequent proceedings.’ ” Troselair, 443 So.2d at 1102, quoting Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211 at 219-20, 99 S.Ct. 1667 at 1673, 60 L.Ed.2d 156 (1979). A showing of “compelling necessity” is required to disclose grand jury testimony during a trial. Trosclair, 443 So.2d at 1103. “That is, the party seeking disclosure must prove that without access to the grand jury materials the party’s case would be greatly prejudiced’ or that an injustice would be done.’ ” Troselair, 443 So.2d at 1103, quoting United States v. Procter & Gamble Co., 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). “In any event, disclosure is left to the sound discretion of the trial court and will not be reversed in the absence of an abuse of that discretion.” Troselair, 443 So.2d at 1103.
When Mr. Jackson, the State’s eyewitness to the murder, took the stand, he informed the prosecutor that his questions were “irrelevant.” After being | instructed by the trial court judge that he had to answer the questions for the record, Mr. Jackson testified that he “didn’t observe nothing” and told Detective Pardo “whatever he wanted to hear.” However, Mr. Jackson could not recall what he told Detective Pardo during his interview. After repeatedly stating that he “didn’t see that guy shoot nobody,” a portion of Mr. Jackson’s recorded audio statement[1] was played for the jury and Mr. Jackson identified his voice on the audio recording.
The trial court judge then dismissed the jury and obtained private counsel for Mr. Jackson. Mr. Jackson’s counsel stated that Mr. Jackson did not wish to testify any further. The trial court judge stated:
The Court finds there is no Fifth Amendment privilege at this point, that the State has argued, and the Court agrees, that you cannot prospectively or in advance of any potentially perjurious testimony invoke the Fifth Amendment right.
*1041 So the Fifth Amendment does not apply to this situation, and the State is allowed to both play the audio tape and/or present other evidence to Mr. Jackson concerning his alleged statements to N.O.P.D. after this alleged homicide.
[[Image here]]
And I need to put on the record, too, I know Mr. Jackson testified before the grand jury. That is proper impeachment should he fail to acknowledge that he testified before the grand jury.
[[Image here]]
I mean, the issue at that point is Mr. Jackson, from what he’s testified to here now, has said that he never spoke to Detective Pardo and Detective Pardo must have misheard him. And the fact is that if he testified essentially the same in the grand jury without that influence, I think it is a proper admissible document.
Following these statements, the jury reentered and the remainder of Mr. Jackson’s recorded audio statement to Detective Pardo was played for impeachment purposes. Upon examination by the State regarding the contents of the audio tape, Mr. Jackson stated, “I plead the Fifth. I ain’t testifying.” Mr. Jackson then ^testified, “[y]ou can do perjury or whatever. I didn’t see that man shoot nobody.” After several inaudible responses, Mr. Jackson informed the trial court that he was not going to answer any more questions.
The State then asked Mr. Jackson about his statements to an assistant district attorney; however, he gave inaudible responses and attempted to improperly “plead the Fifth.” After numerous responses including: “I plead the Fifth,” “I’m not going to answer no more of his questions,” “I didn’t see that dude shoot nobody,” and “give me perjury,” the trial court judge informed Mr. Jackson that he was “going to have to answer the questions.” Mr. Jackson then refused to answer questions regarding a beating, which required hospital attention, within the two months prior to testifying at trial.
Finally, the State asked Mr. Jackson: “Do you remember testifying before the Orleans Parish grand jury in this matter?” Mr. Jackson replied, after several nonverbal responses: “I don’t know what he talking about.” At this point, the trial court judge permitted Mr. Jackson’s statement to the grand jury to be read by the trial jury. When questioned about his statements to the grand jury, Mr: Jackson repeatedly testified that he did not “recall” anything.
Mr. Jackson’s brief testimony before the grand jury was introduced only as a last resort by a trial court judge dealing with an extremely hostile witness who attempted to plead the Fifth, refused to answer any questions, and demanded a perjury charge. Mr. Jackson’s repeated refusal to cooperate with the trial court judge’s instructions presented a compelling necessity for the release of the grand jury testimony. As the State’s eyewitness, the case would have been greatly prejudiced. Accordingly, I do not find that the trial court abused its discretion when it permitted Mr. Jackson’s sacrosanct grand jury testimony to be utilized as an impeachment tool when he refused to admit that he testified before the grand jury.
1¿Furthermore, the introduction of Mr. Jackson’s grand jury testimony also constitutes a harmless error due to the impeachment testimony provided by Detective Prado, the assistant district attorney, and Mr. Jackson’s previously recorded statement. Therefore, I would affirm the conviction and sentence of the trial court.

. Detective Pardo spoke with Mr. Jackson after being contacted by the Sheriffs Office and informed that Mr. Jackson might be a possible witness to the murder. Detective Pardo and Mr. Jackson's conversation was recorded on audio tape.