GARRETT, J.
| T Following a bench trial, the defendant, Byron Spencer Lloyd, was convicted as charged of second degree murder and sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. He appealed. We affirm the defendant’s conviction and sentence.
FACTS
On the evening of December 19, 2011, the 41-year-old defendant killed the victim, Ray Williams, by shooting him in the head at close range. The 54-year-old victim was seated in his car, which was in the driveway at the Shreveport home of the defendant’s mother. The defendant claimed that the victim pulled in the driveway behind him after a “road rage” incident between the two men. According to the evidence presented at trial, the defendant, who was driving a full-size Nissan Titan truck, was following behind the victim, who was driving a 1996 Buick LeSa-bre. The defendant believed,the victim' was driving too slowly, so he flashed his headlights, honked his horn and revved his truck engine at the victim. After the defendant pulled into his mother’s driveway, the victim turned around and came back, also pulling into the driveway. The defendant armed himself with a gun from his own vehicle before confronting the victim. According to the forensic evidence and the testimony of the forensic pathologist who performed the victim’s autopsy, the victim was killed by a bullet to the head which was fired through the open window of his car from a distance of about 12 inches.
|2The defendant went inside his mother’s residence and told her that he had shot someone. He then retrieved the frozen pizza he had come to pick up and fled the crime scene. He went home, where he hid the murder weapon and a box of ammunition under a trash can.
Peggy Lloyd, the defendant’s mother, eventually telephoned the police to report a suspicious vehicle in her driveway. She did not disclose the shooting or her son’s involvement. The responding police officer found the victim slumped over in his car with his foot on the brake; the vehicle was still in drive. The victim’s small dog was also found in the car covered in the victim’s blood. The police learned of the defendant’s involvement from Mrs. Lloyd’s neighbor, Daniel Leloup, who recounted seeing the defendant standing at the driver’s door of the victim’s car and then hearing a “pop.”
• After giving a statement to the police, the defendant was arrested and charged with manslaughter. A grand jury which heard testimony from the defendant upgraded the charge to second degree murder. The defendant, who was represented by retained counsel, waived his right to a jury trial and was subsequently convicted as charged after a bench trial. In rendering its verdict, the trial court provided lengthy and well-articulated reasons for finding that the defendant was guilty as charged of second degree murder and that *886 this was not a justifiable homicide or an accidental shooting.[1]
Following his conviction, the defendant filed several motions, including a motion to reopen the evidence to submit medical reports that he |shad suffered a stroke and was disabled. He also filed motions for new trial and for post verdict judgment of acquittal. These motions were denied. A motion for the trial court to conduct an in camera review of the grand jury testimony of Mr. Leloup for inconsistencies was granted, but no inconsistencies were found. Thereafter, the defendant was sentenced to the mandatory term of life imprisonment at hard labor without benefits.
On appeal, the defendant is represented by different retained counsel who asserted five assignments of error. The defendant filed five pro se assignments of error.
SUFFICIENCY OF EVIDENCE
Two assignments of error (one pro se) question the sufficiency of the evidence presented against the defendant, who claimed at trial that he acted in self-defense and/or that he shot the victim accidentally.

Law

When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Cook, 48,355 (La.App.2d Cir.11/20/13), 127 So.3d 992, writ denied, 2013-3000 (La.5/30/14), 140 So.3d 1174.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Henry, 47,323 (La.App.2d Cir.7/25/12), 103 So.3d 424, writ denied, 2012-1917 (La.3/8/13), 109 So.3d 356.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a trier of fact’s decision to accept or reject the testimony of a witness in whole or in part. State v. Carey, 47,650 (La.App.2d Cir.2/27/13), 110 So.3d 221, writ denied, 2013-0726 (La.11/1/13), 125 So.3d 417.
Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. Specific intent is the state of mind which exists when the circumstances indicate that the offender actively desired the pre *887 scribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); State v. Davis, 40,382 (La.App.2d Cir.10/26/05), 914 So.2d 1129, writ denied, 2005-2419 (La.4/17/06), 926 So.2d 512. As a state of mind, specific intent need not be proved as a fact; it may be inferred from the circumstances and the actions of the defendant. State v. Kahey, 436 So.2d 475 (La.1983); State v. Davis, supra. The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Johnson,. 27,522 (La.App.2d Cir.12/6/95), 665 So.2d 1237; State v. Brooks, 49,024 (La.App.2d Cir.5/14/14), 139 So.3d 1072. The determination of whether the requisite intent is present is a question for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Brooks, supra.
Flight and attempt to avoid apprehension are circumstances from which a trier of fact may infer a guilty conscience. State v. Garner, 45,474 (La.App.2d Cir.8/18/10), 47 So.3d 584, writ not cons., 2012-0062 (La.4/20/12), 85 So.3d 1256.
A homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and the killing is necessary to save himself from that danger. La. R.S. 14:20(A)(1); State v. Jones, 48,458 (La.App.2d Cir.11/20/13), 128 So.3d 593, writ denied, 2013-2926 (La.5/30/14), 140 So.3d 1173. Factors to consider in determining whether a defendant had a reasonable belief that the killing was necessary are the excitement and confusion of the situation, the possibility of using force or violence short of killing, and the defendant’s knowledge of the assailant’s bad character. State v. Free, 48,260 (La.App.2d Cir.11/20/13), 127 So.3d 956, writs denied, 2013-2978 (La.5/30/14), 140 So.3d 1174, and 2014-0039 (La.9/19/14), 148 So.3d 944.
When self-defense is raised as an issue by the defendant, the state has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. State v. Garner, 39,731 (La.App.2d Cir.9/8/05), 913 So.2d 874, writ denied, 2005-2567 (La.5/26/06), 930 So.2d 19; State v. Palmer, 45,627 (La.App.2d Cir.1/26/11), 57 So.3d 1099, writ denied, 2011-0412 (La.9/2/11), 68 So.3d 526.
Manslaughter is defined in La. R.S. 14:31, which provides in pertinent part: A. Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed;
Negligent homicide is defined, in pertinent part, in La. R.S. 14:32 as the killing of a human being by criminal negligence. Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender’s conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances. La. R.S. 14:12.
| tEvidence
Although the defendant did not testify at trial, the trier of fact was presented with his inconsistent versions of the killing and *888 the events that transpired that evening through his statement to the police and his grand jury testimony, together with statements he made to his mother and his cousin. In his initial police statement, the defendant claimed that he was going to his mother’s house when he came up behind the victim, who was driving much slower than the 45 mph speed limit. After he flashed his lights at the car, the car went even slower. After the victim turned his car around, came back, and turned into the driveway of the defendant’s mother, the defendant armed himself with a gun and cocked it. As he walked up to the window of the victim’s car, the gun accidentally discharged. After seeing that he had shot the victim, the defendant ran inside and told his mother to call 911 because he accidentally shot someone. He then went home where he hid the gun. He later called his cousin to take him to the police station.
In his grand jury testimony, the defendant went into greater detail. He stated that he was going to his mother’s to pick up a frozen pizza for his children. He asserted that the victim was driving 30 to 35 mph in an area posted for 45 mph, and he flashed his lights at the victim’s car only once. When the victim pulled into the driveway, the defendant said he “didn’t know what to think.” As a result, he got his semi-automatic 9 mm Taurus handgun from his truck console and cocked it. Standing at the left-hand rear corner of his truck, he pointed the gun at the car, “[ajiming ... at the | ^threat or whoever.”[2] He contended that he did not know how many people were in the car. He said that he told the victim to “get the hell out of my driveway” several times. He asserted that he did not mean to shoot the victim and that firing the weapon might have been a reflex since he had a stroke in 2010, which affected his right side.. He conceded that, to his knowledge, the victim never verbally threatened him or opened his car door. After determining that he had shot the victim, he ran inside and told his mother to call 911 because he shot someone. He admitted that he made no effort to assist the victim and that his mother did not call 911 while he was at the house. Although he had a cell phone, he did not phone 911 either. He denied picking up the shell casing ejected from his gun. The defendant said he then retrieved the DiGiorno pizza and went home, where he hid the gun and ammunition by his trash can. He later called his cousin, Marcus Jackson, to drive him to the police station. While the defendant minimized his role in the road rage incident to the police and grand jury by contending he merely flashed his lights at the victim, he admitted to Marcus that he also honked his horn and revved up the engine of his full-sized truck.
Mrs. Lloyd, the defendant’s mother, testified that she did not hear the gunshot. Her son came in the house, panicking and claiming he had shot someone. When he tried to show her, she refused to go further than the end of the garage. She told the defendant she would call 911. He then left with his gun and the pizza. Instead of instantly calling 911, Mrs. Lloyd called |gher sister. According to Mrs. Lloyd’s account, her sister’s cell phone gave the time of the call as 7:20 p.m. Mrs. Lloyd later called the police and told them only that there was a car in her driveway.[3] She *889 did not tell them that someone had been shot or request an ambulance. Nor did she tell the first responding officers what had happened.
Mr. Leloup, Mrs. Lloyd’s next-door neighbor, testified that he had been standing on his porch that evening. He observed the defendant and his truck in Mrs. Lloyd’s driveway. He noticed the defendant standing at the driver’s door of a car, talking to someone in the car, and then heard a “pop.” Because it was close to New Year’s Eve, he assumed the noise he heard was fireworks. Thereafter, the defendant’s truck left the premises. However, Mr. Leloup later became concerned when he noticed that the car — which was still running and had its lights on — had not moved for a significant amount of time. At about this time, a police officer arrived. Mr. Leloup testified that he walked over to talk to the officer and was present when the officer found the victim.
Officer Steven Gipson, the first officer on the scene, recounted responding to a call about a suspicious vehicle and finding the victim in his car with a gunshot wound to the head. He spoke to Mr. Leloup, who advised him about seeing the defendant walk up to the car and then hearing a pop. When Officer Gipson spoke to Mrs. Lloyd, she said that she had not | ,0heard or seen anything and that she had only observed the car on a security monitor.
Detective Kevin Strickland, the lead detective, testified that when he spoke to Mrs. Lloyd at the house, she did not tell him about her son’s involvement or that she knew someone had been shot. Because he had spoken to Mr. Leloup,-he asked her what vehicle her son drove and then told her to call her son to meet'him at the police station. Although the defendant requested an attorney shortly after arriving at the police station, he later initiated contact with the detective and informed him that he wished to give a statement and proceed without an attorney. After the statement, the detective arrested the defendant on a charge of manslaughter.
Corporal John Madjerick, a crime scene investigator, testified that the victim had an obvious wound just above the left eye. The driver’s side window was down-, and no holes were found in the windshield or any other part of the car. A noticeably deformed projectile was recovered from the passenger side front floorboard. On the window sill of the front passenger door, they found hair, blood and brain or skull fragments.[4] Despite an extensive search, no shell casing was recovered at the crime scene. Corporal Madjerick also testified that the defendant’s right thumb print was matched to a fingerprint taken from the ammunition box found at the defendant’s residence.
hiDr. James G. Traylor, the forensic pathologist who performed the victim’s autopsy, testified that the victim suffered an intermediate range-of-fire gunshot, which entered at the left brow ridge and exited at the right parietal scalp. The bullet track was from front to back, left to right, and bottom to top. According to Dr. Tray-lor, an intermediate range gunshot wound indicates that, depending upon the caliber, the gun was between six and 18 inches away. Based upon the degree of clustering and spreading out of the gunpowder, *890 he estimated that the gun was fired from a distance of one foot.
Carla White, a firearms examiner for the North Louisiana Crime Lab, testified that she examined the murder weapon and that it had neither an excessively light nor an excessively heavy trigger. According to her evaluation, firing the weapon would have required between 6½ pounds (for single action) to 9½ pounds (for double action) to pull the trigger.
Also introduced into evidence were numerous photos of the driveway, the victim in his car, the interior and exterior of the victim’s car, along with other documentary evidence.

Discussion

The defendant contends that the state did not present sufficient evidence to establish that he intentionally shot and killed the victim. He also asserts that the state failed to prove that the homicide was not perpetrated in self-defense.
When viewed in the light most favorable to the prosecution, the evidence presented at trial is more than sufficient for a rational trier of fact 112to conclude beyond a reasonable doubt that the defendant was guilty of second degree murder. The defendant admitted that he fired the shot that killed the victim. Dr. Traylor testified that the victim was killed by a gunshot wound just above his left eye, which was fired from a distance of about one foot. According to Corporal Madjerick, the victim’s window was down; and the victim’s hair, blood and tissue were found on the front passenger seat window sill. This indicated that the defendant fired the gun while standing at the open window, not from the back of his truck. Mr. Leloup testified that he saw the defendant standing at the driver’s side of the car, heard a “popping” noise like a firecracker, and then noticed the defendant had left. Shooting the victim in the head at close range is indicative of the defendant’s specific intent to kill the victim.
The defendant fled the scene of the murder. Despite having a cell phone, he did not call 911 to report the shooting or seek medical assistance for the victim. (The defendant attempts to cast responsibility for these actions upon his own mother, contending that she instructed him to go home to take his medicine while she phoned 911.) After arriving at his home, the defendant hid the gun and ammunition in what he described as “a secret location.” These actions were indicative of the defendant’s guilty conscience and his desire to avoid the consequences of his actions.
Due to the actions of the defendant and his mother, the police were able to develop the defendant as a suspect only after Mr. Leloup reported his observations. The defendant attacks Mr. Leloup’s credibility, making much of his inability to give an exact estimate of when the shooting |,¡¡occurred or how long the victim’s car sat in Mrs. Lloyd’s driveway with the lights on and the engine running. The trial judge, who observed Mr. Leloup and found him to be a credible witness, concluded that these matters were not significant. Great deference is accorded to the trier of fact’s credibility determinations, and we will not assess the credibility of witnesses or reweigh evidence on appeal.[5]
The defendant argues that the trial court erred in not finding that the shooting was accidental, due to his alleged medical deficits from his stroke, and thus negligent homicide. Like the trial court, we reject *891 this contention. The defendant obviously did not believe himself too disabled to have a loaded gun in the center console of his truck. Furthermore, he was not so disabled he could not retrieve his gun, cock and fire it, and then remove it from the crime scene and conceal it at his home. Again, the close distance at which the victim was shot and the fact that the gun was fired through the open window belied the defendant’s assertion that he accidentally fired the weapon while standing behind his truck. The defendant’s actions demonstrate that he actively desired to shoot his gun, something much more than negligent homicide’s “disregard of the interest of others ... amounting] to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.”
Furthermore, there is no evidence of “a sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average |14person of his self-control and cool reflection” sufficient to reduce the defendant’s killing of the victim to manslaughter. The road rage incident instigated by the defendant had concluded and the victim took no provocative action against the defendant.
Our review of the record also reveals that the state proved beyond a reasonable doubt that the killing was not in self-defense. As noted by the trial court, there was no provocation. The victim merely turned into the driveway of the defendant’s mother. By the defendant’s own admissions, the victim did not make any threat to the defendant or even attempt to get out of his car. Indeed, when the police came to Mrs. Lloyd’s driveway, the victim’s foot was still on the brake and his hands were in his lap. The photos of the interior of the victim’s car do not show any weapons.
Finally, we distinguish the instant case from State v. Savoy, 418 So.2d 547 (La.1982), which was cited by the defendant. Savoy shot her common-law husband. There were no witnesses and the state’s case consisted entirely of circumstantial evidence. Savoy, “a consummate liar,” gave four different versions of the shooting. None of the physical evidence in that case was inconsistent with self-defense. Because there was a lack of evidence to negate self-defense, the court reversed Savoy’s conviction for second degree murder. Under the unique circumstances presented in that case, the conflicting accounts given by Savoy after the shooting did not create affirmative, substantive evidence of her guilt. The state was unable to establish beyond a reasonable doubt that the killing was not committed in self-defense.
|1fiIn the instant matter, the state’s case rested on much more than the inferences arising from the defendant’s conflicting statements. The state presented objective, forensic evidence by the pathologist and the firearms expert. Furthermore, the state presented the testimony of the investigating officers, together with photographs and documentary evidence. The testimony of the neighbor placed the defendant at the driver’s side door at the time of the shooting. The trier of fact clearly had a rational basis for concluding that the shooting was not in self-defense. We find that the evidence submitted by the state established beyond a reasonable doubt that the killing was not in self-defense.
These assignments of error lack merit.
RECORDINGS NOT ADMITTED INTO EVIDENCE
In this assignment of error, the defendant contends that the trial court erred by rendering a verdict based on audio recordings that were not offered and introduced *892 as evidence at trial. The defendant asserts that the recordings of the call to police by his mother and his statement to Detective Strickland on the night of the offense were played in court by the state, but the recordings were not formally admitted into evidence at trial. According to the defendant, the trial court improperly based its verdict on the recordings.

Law

If no objection is made in the trial court, any error committed therein is not preserved for appellate- review. State v. Lewis, 98-447 (La.App. 5th Cir.10/28/98), 720 So.2d 1230. See also State v. Rodriguez, 554 So.2d 269 (La.App. 3d Cir.1989), writ granted in part and remanded, 558 So.2d 595 (La.1990). Objections are required under La. C. Cr. P. art. 841, which states:
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.

Discussion

At trial, the prosecution played recordings of Mrs. Lloyd’s call to the police and the defendant’s interview with Detective Strickland on the night the offense occurred. Defendant’s counsel did not object to the use of the recordings at. trial. With regard to the defendant’s statement to Detective Strickland, the record is clear that defense counsel wanted the recording played in' open court so the trial court could hear it. However, the" prosecution failed to formally introduce the recordings into evidence after they were played in the trial court and they were not included in the record on appeal. In this court, defense counsel filed a motion to supplement the record, noting the absence of the recordings in the record.[6] The defendant sought to have the matter remanded to the trial court for a determination of whether the deficiencies in the record could be legally and proeedurally corrected. On November 21, 2013, this court issued an order transferring 117the motion to the trial court for a determination of whether it was proper to supplement the record. The trial court furnished this court with the recordings of Mrs. Lloyd’s call to the police, the defendant’s interview with Detective Strickland, and the grand jury testimony of Mr. Leloup. The trial court also furnished transcripts of the recordings made by the court reporter, reflecting exactly what the trial court heard in the courtroom during the trial.
At trial, during Mrs. Lloyd’s testimony, the prosecution played a portion of her call to the police on the night of the offense and asked her whether it was a fair and accurate representation of the- call. She stated it was her voice on the recording and reflected what she said. She was additionally questioned about the content of the call in which she simply stated there was a car in her driveway with the lights on and she was alone. The recording played in court lasted approximately 36 seconds and Mrs. Lloyd did not tell the *893 police that the driver of the vehicle had been shot.
At trial, the prosecution asked Detective Strickland about the substance of his conversation with the defendant on the night of the offense. Defense counsel stated, “Your Honor, I think the tape would be the best evidence.” After establishing that the conversation was recorded, the prosecution said, “At this time, I would be happy to play the recorded statement at this time.” Defense counsel responded, “Without objection.” The recording was played for the trial court. After the recording was played, Detective Strickland testified that it was an accurate representation of the conversation he had with the defendant.
| igThe defendant argues that the trial court erred in considering the recordings which were not properly admitted into evidence and contends that the appropriate remedy is to vacate the conviction and sentence and remand the case for a new trial. The defendant cites Wilkin-Hale State Bank v. Tucker, 148 La. 980, 88 So. 239 (1921), and Jackson v. United Servs. Auto. Ass’n Cas. Ins. Co., 08-333 (La.App. 5th Cir.10/28/08), 1 So.3d 512, both civil suits, in support of his argument. These cases are distinguishable from the present matter. In Wilkin-Hale State Bank v. Tucker, supra, an appellate court decided an issue solely upon the testimony in depositions that were not introduced into evidence. The defendants had reserved their right to object if the depositions were offered into evidence at trial but, because the depositions were not offered into evidence, they were never afforded an opportunity to exercise that right. In Jackson v. United Servs. Auto. Ass’n Cas. Ins. Co., supra, a trial court granted an exception of prematurity in favor of the insurer based upon the language of the insurance policy which was attached to a memorandum, but not admitted into evidence. No evidence was entered by either party at the hearing on the exception. In each of these cases, there was no opportunity for the opposing party to object to the admission of the evidence or to waive objections. By contrast, in the present case, the defendant had full opportunity to object and did not do so.
Several criminal cases dealing precisely with instances in which evidence is considered by the trial court without objection have held that the evidence is deemed to be tacitly admitted. See State v. Lewis, supra; State v. Taylor, 98-603 (La.App. 5th Cir.3/10/99), 733 So.2d 77; State v. Simmons, 00-35 (La.App. 5th Cir.7/25/00), 767 So.2d 860; State v. Rodriguez, supra. In Rodriguez, the defendant argued that evidence offered for identification was not admitted into evidence, constituting reversible error. At trial, a state trooper testified about the contents of her report, but the report was not admitted into evidence. Because the defendant failed to object at trial, the appellate court found that any right to attack the conviction based on the alleged error was waived.
In Lewis, the defendant appealed his conviction for possession of a firearm by a convicted felon, arguing that photos of the crime scene and recordings or transcripts of witness statements were not admitted into evidence and should not have been considered by the jury. At trial, defense counsel either withdrew objections to the evidence or expressly agreed to its introduction. However, the items were not formally admitted into evidence. The appellate court found that the items were tacitly admitted without objection.
In Taylor, the defendant was convicted of illegal carrying of a weapon while in possession of a controlled dangerous substance. At trial, the prosecution sought to introduce into evidence guns, drugs, and *894 other items. Defense counsel asked to be allowed to reserve its right to object to the evidence and have argument later, out of the hearing of the jury. The trial court agreed, but there was no other argument regarding admission of the evidence and no formal ruling admitting the items into evidence. The 12nappellate court found that the items were tacitly admitted without objection and the jury did not err in considering the items in reaching its verdict.
In Simmons, the defendant entered a guilty plea under State v. Crosby, 338 So.2d 584 (La.1976), to possession of marijuana with intent to distribute. On appeal, he claimed the trial court erred in denying his motion to suppress evidence against him based upon a police report that was not properly introduced into evidence. At the hearing on the motion to suppress, defense counsel stated that the parties agreed to submit on the facts contained in a police report. In denying the motion to suppress, the trial court commented that it read the police report stipulated to by defense counsel and the prosecution. The appellate court found that the trial court tacitly admitted the report and, by failure to object to the informal procedure employed by the trial court, the defendant acquiesced in the admission of the evidence.
In this ease, the recordings complained of were played in court without objection by the defendant. Under the reasoning of Rodriguez, Lewis, Taylor, and Simmons, we find that the recordings were tacitly admitted and the trial court did not err in considering them. Further, the record now contains transcripts of the recordings played in open court. Therefore, we have a complete transcript of the entire trial.
This assignment of error lacks merit.
GRAND JURY TESTIMONY
The defendant makes two assignments of error pertaining to grand jury testimony. First, he contends that the trial court erred in permitting the | ⅞1 state to play a recording of his grand jury testimony at trial. Second, he requests that this court review the sealed grand jury testimony of Mr. Leloup for inconsistencies which would be Brady material.

Defendant’s testimony

In this case, the defendant did not testify at trial, but his grand jury testimony was introduced. The defendant argues that the use of grand jury testimony violated the constitutional mandate of grand jury secrecy contained in La. Const. Art. V, § 34(A). The defendant recognizes that admission of his testimony is allowed under State v. Poland, 2000-0453 (La.3/16/01), 782 So.2d 556, but argues that the case is constitutionally infirm. He also asserts that use of his grand jury testimony is impermissible under La. C.E. art. 607, because attacks on credibility may not be made until the witness has been sworn.
La. Const. Art. V, § 34(A) provides:
There shall be a grand jury or grand juries in each parish, whose qualifications, duties, and responsibilities shall be provided by law. The secrecy of the proceedings, including the identity of witnesses, shall be provided by law.
La. C. Cr. P. art. 433 specifies who may be present during grand jury proceedings. The secrecy of grand jury proceedings is established in La. C. Cr. P. art. 434, which also sets forth exceptions to the secrecy requirement:
A. Members of the grand jury, all other persons present at a grand jury meeting, and all persons having confidential access to information concerning grand jury proceedings, shall keep secret the testimony of witnesses and all other *895 matters occurring at, or directly connected with, a meeting of the grand jury. However, after the indictment, such persons may reveal statutory irregularities in grand jury proceedings to defense counsel, the attorney general, the district attorney, or the court, and may testify concerning them. Such persons may disclose | ^testimony given before the grand jury, at any time when permitted by the court, to show that a witness committed perjury in his testimony before the grand jury. A witness may discuss his testimony given before the grand jury with counsel for a person under investigation or indicted, with the attorney general or the district attorney, or with the court.
B. Whenever a grand jury of one parish discovers that a crime may have been committed in another parish of the state, the foreman of that grand jury, after notifying his district attorney, shall make that discovery known to the attorney general. The district attorney or the attorney general may direct to the district attorney of another parish any and all evidence, testimony, and transcripts thereof, received or prepared by the grand jury of the former parish, concerning any offense that may have been committed in the latter parish, for use in such latter parish.
C. Any person who violates the provisions of this article shall be in constructive contempt of court.
Another exception to the requirement of grand jury secrecy is constitutionally mandated when the prosecutor must disclose a witness’ grand jury testimony to the defendant because the testimony contains material exculpatory evidence that must be turned over to the defendant under Brady v. Maryland, supra. See State v. Peters, 406 So.2d 189 (La.1981); State v. Poland, supra; State v. Ross, 2013-0175 (La.3/25/14), 144 So.3d 932.
In State v. Poland, supra, the Louisiana Supreme Court considered whether use of a person’s grand jury testimony in a subsequent criminal prosecution of that person violates the principles of grand jury secrecy contained in La. C. Cr. P. arts. 433 and 434, when the person knowingly and intelligently waives the right against self- • incrimination in the grand jury proceeding while represented by counsel. In Poland, the court recognized that the use of a defendant’s grand jury testimony as direct substantive | ^evidence of his guilt does not fall under the exceptions of La. C. Cr. P. art. 434, and the exception is not constitutionally required as in Peters. However, the court concluded that grand jury secrecy is designed for a non-target witness and the same considerations are not significant when the target of the investigation voluntarily testifies before the grand jury with counsel present.
The defendant in Poland knew he was the target of the investigation, and knowingly and voluntarily waived his right to remain silent and not to incriminate himself. The supreme court stated:
Perhaps more significantly, this defendant, already facing criminal charges, knowingly and voluntarily, and in the presence of his attorney, waived his right to remain silent and his right not to incriminate himself. A person has a constitutional right not to give evidence against himself or be a witness against himself. U.S. Const. Amend. V, cl. 3; La. Const, art. I, § 16. However, that right can be waived if done knowingly and voluntarily. A person also has a statutory right to have his testimony before a grand jury held in secrecy, but there is no apparent reason why that right cannot also be waived, unless the rights of others are affected or the in *896 tegrity of grand jury proceedings is undermined.
Here, defendant, while under criminal charges, knowingly and voluntarily waived his right to remain silent and not to incriminate himself. Knowing he was the target of the investigation, he told the grand jury, without compulsion and with his attorney present, his version of the occurrence. Defendant took his chances of persuading the grand jury not to indict him, and he lost. Exclusion of the testimony that defendant intended to be exculpatory would serve absolutely no purpose associated with the secrecy of grand jury testimony or with the fairness of criminal proceedings.
As observed in Poland, where the defendant knows he is the target of the grand jury investigation and chooses to waive his right to remain silent and testify before the grand jury with his lawyer present, all constitutional safeguards are in place and there is no reason his testimony cannot be ^admitted as probative evidence at trial. See also In re Grand Jury, 1998-2277 (La.4/13/99), 737 So.2d. 1. Recently, this court considered this same argument where a defendant, convicted of manslaughter, claimed he acted in self defense. His grand jury testimony was used against him at trial. This court found no error in the use of the grand jury testimony. See State v. Mack, 49,376 (La.App.2d Cir.11/19/14), 152 So.3d 229.
In the instant case, the defendant knew he was the subject of the grand jury investigation. He was fully advised by the state that his grand jury testimony could be used against him at trial. The defendant and his attorney also executed a written document acknowledging that the defendant had been fully advised of his rights. With the advice of counsel, he waived his right to remain silent, both orally and in writing, and testified before the grand jury, relating his version of the facts. As observed in State v. Poland, supra, exclusion of this testimony would serve no purpose associated with the secrecy of grand jury testimony or with the fairness of criminal proceedings. We reject the argument that the opinion in Poland is constitutionally infirm.[7]
This assignment of error is meritless.

|¾¡¡Witness’ testimony

Following his conviction, the defendant filed a motion requesting the trial court to conduct an in camera review of the grand jury testimony of Mr. Leloup to search for inconsistencies with his trial testimony.[8] The defendant requested that, if inconsistencies were noted, the trial court consider those in determining whether to grant the motions for post verdict judgment of acquittal and for new trial. The trial judge granted the motion, but his in camera review revealed no inconsistencies. The trial judge stated that Mr. Leloup’s testimony was remarkably consistent with his trial testimony. The trial court found there was no basis for granting a new trial based upon the existence of material favorable to the defendant.[9] On appeal, the defendant requests that this court now *897 review Mr. Leloup’s grand jury testimony to determine if the trial court’s ruling was correct. According to the defendant, if there were inconsistencies that could have been used to impeach Mr. Leloup, the trial court erred in denying the defendant’s motion for new trial.

Law

In State v. Higgins, 2003-1980 (La.4/1/05), 898 So.2d 1219, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005), the Louisiana Supreme Court outlined the principles applicable to review of grand jury testimony for exculpatory material, as follows:
As a general matter, a defendant is not entitled to production of a transcript of a secret grand jury proceeding against him, even for use at trial in conducting cross-examination. La.Code Crim. Proc. art. 434; State v. Peters, 406 So.2d 189, 190-91 (La.1981). The purpose of this rule is not to protect a defendant or witness at a subsequent trial, but to encourage the full disclosure of information about crime. Id.; see also State v. Ivy, 307 So.2d 587 (La.1975). However, the rule of secrecy is
not absolute. In some situations justice may require that discrete segments of grand jury transcripts be divulged for use in subsequent proceedings. State v. Trosclair, 443 So.2d 1098, 1102-03 (La.1983) (citing Douglas Oil Co. v. Petrol Stops Nw., 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979)). Thus a trial court may act upon a specific request stated with particularity and review grand jury transcripts in camera to determine if information contained therein is favorable to the accused and material to guilt or punishment. Trosclair, 443 So.2d at 1103; Peters, 406 So.2d at 191.
The party seeking disclosure bears the burden to show a compelling necessity for breaking the indispensable secrecy of grand jury proceedings. He must show that, without the material, his case would be greatly prejudiced or that an injustice would be done. Trosclair, 443 So.2d at 1103 (citing United States v. Procter & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958)); State v. Ates, 418 So.2d 1326, 1328-29 (La.1982). If allowed, disclosure “must be closely confined to the limited portion of the material for which there is particularized need.” Trosclair, 443 So.2d at 1103. In any event, disclosure is left to the sound discretion of the trial court whose ruling will not be reversed absent an abuse of that discretion. Id.
In this case, we have reviewed the grand jury testimony given by Mr. Leloup, paying particular attention to the factors enumerated by the defendant in his brief. Like the trial court, we find no inconsistencies or any other exculpatory material that should have been disclosed to the defendant. The defendant has not shown, nor does our review detect, a compelling necessity for breaking the secrecy of the grand jury proceeding. The trial court did not err in its finding on this issue and in denying the defendant’s motion for new trial.
I27TMS assignment is meritless.
HEARSAY EVIDENCE
The defendant asserts that the trial court erred when it overruled his objection to Officer Gipson’s testimony regarding statements made by Mr. Leloup. Specifically, he argues that this testimony was hearsay and should not have been allowed.

Law

Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. art. *898 801(A)(1) and (C). Hearsay evidence is not admissible, except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 802; State v. Williams, 98-1006 (La.App.. 5th Cir.3/30/99), 735 So.2d 62, writ denied, 1999-1077 (La.9/24/99), 747 So.2d 1118; State v. Wade, 39,797 (La.App.2d Cir.8/9/05), 908 So.2d 1220, writs denied, 2006-0109 & 2006-0148 (La.6/2/06), 929 So.2d 1251.
Hearsay is excluded because the value of the statement rests on the credibility of the out-of-court asserter, who is not subject to cross-examination and other safeguards of reliability. State v. Martin, 458 So.2d 454 (La.1984); State v. Wade, supra.
Where an investigating officer testifies concerning events leading to the arrest of a defendant, statements made to him by others during the course of the investigation are not hearsay, if they are not offered for the truth of the matter asserted, but merely to explain the officer’s actions. State v. McNair, 597 So.2d 1096 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1113 (La.1992). In other words, where the officer does not testify with regard to the substance of what another person told him, but with regard to what he did in response to that information, the testimony is not considered hearsay. State v. Wade, supra.
However, the fact that an officer acted on information obtained during the investigation may not be used as an indirect method of bringing before the jury the substance of the out-of-court assertions of the defendant’s guilt that would otherwise be barred by the hearsay rule. State v. Broadway, 1996-2659 (La.10/19/99), 753 So.2d 801, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000). Nevertheless, the erroneous admission of hearsay evidence does not require a reversal of the defendant’s conviction if the error is harmless beyond a reasonable doubt. Reversal is mandated only when there is a reasonable possibility that the hearsay evidence might have contributed to the verdict. State v. Wille, 559 So.2d 1321 (La.1990); State v. Wade, supra.

Discussion

When Officer Gipson began to testify about Mr. Leloup, the defense objected as to hearsay. The trial court overruled this objection, while noting that the testimony was not allowed for the truthfulness of it, but as a response to the scene and his activities there. Afterwards, Officer Gipson testified as to Mr. Leloup’s statement, particularly his observations of the defendant and the victim.
| a3This testimony was from an officer and was accepted by the court to explain the events leading to the arrest of the defendant. Although Officer Gipson’s testimony extended beyond his own actions, it was not accepted to prove the truth of the matter, and thus is not hearsay. In addition, Officer Gipson did not state that Mr. Leloup told him the defendant shot and killed Mr. Williams.
Finally, the defendant was able to cross-examine Mr. Leloup. Any error in the admission of the evidence was harmless beyond a reasonable doubt.
This assignment of error is meritless.
NEWLY DISCOVERED EVIDENCE
In this pro se assignment of error, the defendant contends that a police inventory listing a .22 caliber pistol allegedly found in the victim’s car is newly discovered evidence. The defendant asserts that the prosecution failed to make known this “vital evidence” to support his claim of self-defense, and concludes that he would not *899 have been found guilty if only this evidence had been introduced during the grand jury hearing or at trial.
In order to obtain a new trial based on “newly discovered evidence,” the defendant has the burden of showing that “(1) the new evidence was discovered after trial, (2) the failure to discover the evidence at the time of the trial was not caused by lack of diligence, (3) the evidence is material to the issues at trial, and (4) the evidence is of such a nature that it would probably have produced a different verdict.” State v. Bell, 2009-0199 (La.11/30/10), 53 So.3d 437; La. C. Cr. P. art. 851(B)(3).
The police reports mentioning the firearm were supplied by the state to the defendant prior to trial in discovery responses.[10] This issue was not raised in the trial court and the defendant may not raise it for the first time on appeal. La. C. Cr. P. art. 841(A). Further, because there was no “newly discovered evidence,” the defendant’s request for a new trial on this basis is without merit.
This assignment lacks merit.
INCOMPLETE RECORD
In this pro se assignment of error, the defendant contends that the record is not complete. Specifically, he argues that a section of his grand jury transcript in which he allegedly had a 15-minute discussion with the prosecutor concerning “the distance of 18 inches away from the victim” is missing, and the state intentionally did not play this portion in open court during the trial. Along with this argument, the defendant contends that there is no certificate of the official court reporter certifying that the transcript is a true and correct record of the proceeding.

Law

The Louisiana State Constitution provides that “[n]o person shall be subjected to imprisonment ... without the right of judicial review based upon a complete record of all evidence upon which the judgment is based.”_J_2jLa. Const. Art. I, § 19. In felony cases, the recording of “all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel” is statutorily required. La. C. Cr. P. art. 843. However, a slight inaccuracy in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal would not cause a reversal of a defendant’s conviction. State v. Ashley, 44,655 (La.App.2d Cir.9/23/09), 22 So.3d 1045, writ denied, 2009-2305 (La.4/23/10), 34 So.3d 271.

Discussion

The record is wholly adequate for review on appeal; the testimony of all witnesses is identified and transcribed. The record reflects that the audio of the defendant’s grand jury testimony was played during the trial and admitted into evidence on a CD. The trial transcript indicates that a brief portion concerning the defendant’s prior convictions was not played for the trier of fact. A certified copy of the transcript of the grand jury proceedings—including the entirety of the defendant’s testimony—-was later supplemented into the record under seal.[11] The *900 defendant has failed to demonstrate any reasonable likelihood that the record is deficient or that he suffered any prejudice resulting from the alleged inadequacy of the record. In addition, a certificate is included in the grand jury transcript admitted in the record under seal certifying that the transcript is true and correct, and | S2there is no showing that it is not. Further, this was not raised in the trial court. La. C. Cr. P. art. 841(A).
This assignment of error is without merit.
INVOLUNTARY STATEMENT
In this pro se assignment of error, the defendant asserts for the first time that his confession was involuntary. However, he does not assert that the confession was rendered involuntary due to police action. He contends that his mother was coerced by detectives to be interviewed alone, and that she then compelled the defendant to give a confession. The defendant labels himself as being not of sound mental capacity due to his stroke, reasons that he was unable to make a knowing and informed waiver, and references a statement made by Detective Strickland in a police report that the defendant was not “mentally incompetent” and lived “a regular lifestyle.”

Law

The Fifth Amendment to the United States Constitution guarantees that no person shall be compelled in any criminal case to be a witness against himself. This guarantee is applicable to the states through the Fourteenth Amendment.
Before introducing a confession into evidence, the state must affirmatively prove that it was not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises; the state must also establish that an accused who makes a statement during custodial interrogation was first advised of his Miranda rights. La. R.S. 15:451; State v. Jennings, 39,543 (La.App.2d Cir.3/2/05), 895 So.2d 767, writ denied, 2005-1239 (La.12/16/05), 917 So.2d 1107. Miranda does not apply to private citizens who have no connection -to the state and are not acting as agents of law enforcement officials. Furthermore, Miranda applies not to all “state actors” but only to persons who are either law enforcement officers or acting as an agent of law enforcement. State v. Bernard, 2009-1178 (La.3/16/10), 31 So.3d 1025.
The admissibility of a confession is a question for the trial judge, whose conclusions on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility should not be overturned on appeal unless they are not supported by the evidence. State v. Demming, 40,033 (La.App.2d Cir.9/21/05), 911 So.2d 894.
Any mental incapacity is an important factor to consider in deciding the voluntariness of a confession. The prosecution must introduce sufficient evidence to establish that under the totality of the circumstances, the defendant was aware of the nature of the right being abandoned. State v. King, 41,084 (La.App.2d Cir.6/30/06), 935 So.2d 815, writ denied, 2006-1803 (La.2/16/07), 949 So.2d 411. Low intellect, moderate mental retardation or diminished mental capacity does not per se and invariably vitiate capacity to make a free and voluntary statement or a knowing and intelligent Miranda waiver. State v. Manning, 2003-1982 (La.10/19/04), 885 So.2d 1044, cert. denied, 544 U.S. 967, 125 S.Ct. 1745, 161 *901 L.Ed.2d 612 (2005); State v. Cope, 48,739 (La.App.2d Cir.4/9/14), 137 So.3d 151.
| ^Discussion
The record shows that the defendant was fully advised of his Miranda rights and that he executed a written waiver of rights, which was introduced into evidence. The record supports the finding that the state affirmatively proved that the confession was not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La. R.S. 15:451. Detective Strickland testified that he did not coerce the defendant in any way or promise him anything or induce him in any way to speak. As to his argument about having an unsound mind, the defendant did not plead not guilty by reason of insanity, nor was his mental capacity to proceed ever raised. No evidence of diminished capacity was ever introduced at trial. As to the defendant’s contentions regarding the role his mother allegedly played in his confession, there is no indication that she was a state actor acting as an agent for law enforcement.
This assignment of error is without merit.
INEFFECTIVE ASSISTANCE OF COUNSEL
In this pro se assignment of error, the defendant contends that his trial counsel was deficient in several ways. In particular, he assails counsel’s failure to emphasize his medical maladies.

Law

The test for effectiveness of counsel is two-pronged. First, a defendant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment to the U.S. Constitution. Second, he must show that the deficient performance [^prejudiced the defense by establishing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The assessment of an attorney’s performance requires his conduct to be evaluated from counsel’s perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel’s judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Moore, 48,769 (La.App.2d Cir.2/26/14), 134 So.3d 1265, writ denied, 2014-0559 (La.10/24/14), 151 So.3d 598.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief (“PCR”) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentia-ry hearing under La. C. Cr. P. art. 930. State v. Cook, supra. However, when the record is sufficient, an appellate court may resolve this issue on direct appeal in the interest of judicial economy. State v. Cook, supra.

Discussion

The defendant argues that his attorney failed to conduct a medical pretrial background investigation for any defense strategy, despite having records documenting his physical and mental disabilities. He also argues that his attorney was ineffective for failing to introduce the motions argued at the sentencing hearing at an earlier point. Although his counsel did not present any medical evidence about the defendant’s physical and mental [^disabilities, this court affords great deference to trial counsel’s tactical decisions and trial strategy.
*902 The record reflects that the defendant’s attorney thoroughly cross-examined Mrs. Lloyd about her son’s condition. Further, the defendant’s grand jury testimony contained much detail about his medical condition.[12] Even if medical testimony had been introduced, there is no explanation as to how that information would have negated the evidence that the defendant intentionally walked to his truck, grabbed his gun, fired at a close range, and then fled the scene.
The defendant argues that his attorney was ineffective for failing to interview his doctors, who could have explained the alleged involuntary muscle spasms suffered by him. However, the defendant fails to demonstrate how, with this evidence, there would have been a reasonable probability that the outcome of the trial would have been different.
Defendant argues that his attorney was ineffective for failing to present evidence that he was referred to outpatient psychiatric care for his PTSD. The record reflects that the defendant could appreciate the wrongness of his actions and was conscious of the difference between right and wrong. He did not show any regard for human life as he fled the scene. The defendant has failed to demonstrate that, but for counsel’s failure to raise these claims, there is a reasonable probability that the outcome of the trial would have been different.
| S7This assignment lacks merit.
ERROR PATENT
Our error patent review reveals that the trial court did not properly advise the defendant of the prescriptive period for seeking post-conviction relief as required by La. C. Cr. P. art. 930.8(C). Therefore, we advise the defendant, by way of this opinion, that no application for post-conviction relief shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. arts. 914 or 922.
CONCLUSION
The defendant’s conviction and sentence are affirmed.
AFFIRMED.

. Since the defendant was tried before a judge instead of a jury, we have the benefit of the trial judge's comprehensive analysis of both the evidence and the applicable law.

.- In his grand jury testimony, the defendant marked on a diagram where he was standing when the gun went off. He marked the location at the driver's side rear bumper of his truck, nowhere near the driver's side door- of the victim’s car. This diagram was introduced at trial as State Exhibit # 22.

. According to the police, Mrs. Lloyd’s call was placed at 8:42 p.m. We also note that *889 while the record contains discussion about Mrs. Lloyd’s "911 call,” it is unclear whether she called 911 or the patrol desk for the police department.

. The victim’s small lap dog was found in the car with blood around its mouth and on its fur. It was removed from the vehicle for its own safety and to prevent it from disrupting the crime scene.

. While the record does not reveal the exact timeline for the events surrounding the murder, it is clear that a significant amount of time passed between the shooting and Mrs. Lloyd's call summoning the police.

. The defense motion also noted the absence of the grand jury testimony of a witness, Mr. Leloup, which the trial court determined was not exculpatory material that must be disclosed under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The defendant sought to have that testimony reviewed on appeal and the record supplemented with the grand jury testimony. This issue will be discussed below.

. We also find that La. C.E. art. 607 has no application to this matter. The article provides for the impeachment of a witness at trial. Here the defendant did not testify.

. He also requested review of the grand jury testimony of Dr. Traylor. However, this request was deemed moot because Dr. Traylor did not testify before the grand jury.

. We note that, prior to trial, the defendant also requested an in camera inspection of grand jury testimony of any witness that contained material favorable to the defendant. A different judge conducted that inspection and found no exculpatory material.

. The victim’s car was impounded after the shooting. Two of the many police reports provided to the defense in discovery list a .22 caliber pistol. No location was provided in the reports. However, no weapon is visible in any of the photographs of the victim's car.

. We have compared the audio played before the trial court and the certified transcript of *900 the defendant’s grand jury testimony, and found no discrepancies.

. However, the trial testimony of the defendant's mother and the defendant’s grand jury testimony also described the defendant as the primary caregiver for his three children due to his wife’s bipolar condition.