Judgment rendered July 17, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,697-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

DOYLE SHANNON                               Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2021-CR-1740

Honorable Scott Leehy, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Douglas Lee Harville

DOYLE SHANNON                               Pro Se

ROBERT S. TEW                        Counsel for Appellee
District Attorney

KALEE MORGAN MOORE
HOLLY A. CHAMBERS-JONES
Assistant District Attorneys

* * * * *

Before ROBINSON, HUNTER, and ELLENDER, JJ.

**ELLENDER, J.**

Doyle Shannon was convicted by jury of first degree rape and second degree kidnapping, receiving a mandatory life sentence for rape and 40 years for kidnapping. He appeals his convictions only, arguing the trial court erred by sustaining multiple objections made during his cross-examination of the victim. For the reasons expressed, we affirm.

## FACTS AND PROCEDURAL HISTORY

On April 8, 2021, BS[1] was discharged from a rehabilitation center and stayed overnight at the Studio 6 motel on Martin Luther King Drive in Monroe. The next morning, after checking out and waiting most of the day for her sister to come pick her up, she realized her phone needed to be charged so she walked to the nearby Super 8 motel and asked the clerk to borrow a charger. Shannon, who was in the lobby and overheard this conversation, offered BS the use of his own charger, but only if she came to his room. While she was charging her phone, Shannon's behavior changed drastically, so BS tried to get out of his room and began walking toward the door. Shannon physically restrained BS from leaving declaring she was not going anywhere, despite her attempts to resist. Shannon made BS drink something that immediately caused her to feel intoxicated, pointed a gun at her, and demanded she strip naked. Shannon proceeded to rape BS multiple times over the course of the night and into the next morning.

When Shannon left the room to get breakfast, BS fled and called her relatives, who contacted the police. Upon arrival, officers located BS in the

---

[1] BS is referred to by her initials since she was the victim of a sex crime. La. R.S. 46:1844(W).

parking lot and she informed them she had been raped repeatedly and held against her will by a male armed with a handgun. Later, when Shannon returned to the scene, BS identified him as her assailant and he was arrested.

Shannon was charged by bill of indictment with first degree rape, second degree kidnapping, possession of a firearm by a convicted felon, and false imprisonment. He was tried in February 2023, but, prior to jury selection, the state dismissed the possession of a firearm by a convicted felon and false imprisonment charges. Shannon was found guilty as charged on both remaining counts, and was sentenced to life imprisonment without benefits for first degree rape, and 40 years without benefits for second degree kidnapping. The sentences were imposed concurrently.

## DISCUSSION

At trial, the state sought to admit a videoed statement of BS taken shortly after she had been raped. Prior to its admission, the state confirmed BS had undergone a SANE evaluation before giving the statement. The state first played a brief portion of the video before questioning BS, who confirmed it was her and that she had given the statement shortly after being raped. The video, which contained BS's account of what happened, was then admitted without objection and played in its entirety for the jury. At the conclusion of the video, the state further questioned BS before she was tendered. BS was cross-examined by defense counsel on issues related to her testimony and about the recorded statement. Numerous objections were lodged by the state during the cross-examination, with the trial court sustaining some and overruling others.

In his sole assignment of error, Shannon urges the court erred in sustaining repeated hearsay objections raised by the state. He contends that

2

this effectively prevented him from unfettered cross-examination relative to her videoed statement and precluded the jury from having a full understanding of the case. Even though no objection was made to the admissibility of the videoed statement, Shannon asserts it should not have been admitted because the statement was not made under oath and was not subject to sufficient cross-examination. He concludes that the court's rulings prevented him from having a fair trial.

At the outset, we address the admissibility of BS's videoed statement. As the statement was consistent with her testimony and was one of initial complaint of sexually assaultive behavior, it was not hearsay. La. C.E. art. 801(D)(1)(d). It was, therefore, admissible. *State v. Hilliard*, 52,652 (La. App. 2 Cir. 8/14/19), 278 So. 3d 1065, *writ denied*, 19-01701 (La. 7/24/20), 299 So. 3d 68. To the extent that Shannon is now arguing BS's statement should not have been admitted, the argument lacks merit.

Moreover, a party must make a timely objection to evidence that a party considers to be inadmissible and must state the specific ground for the objection. La. C.E. art. 103(A)(1); La. C. Cr. P. art. 841. If no objection is made in the trial court, any error committed therein is not preserved for appellate review. *State v. Lloyd*, 48,914 (La. App. 2 Cir. 1/14/15), 161 So. 3d 879, *writ denied*, 15-0307 (La. 11/30/15), 184 So. 3d 33; *State v. Ford*, 55,450 (La. App. 2 Cir. 1/10/24), 379 So. 3d 277. In short, lack of a contemporaneous objection precludes any argument that the statement was improperly admitted.

Shannon specifically contends that the trial court's sustaining many of the state's objections prevented him from properly cross-examining BS and inhibited the jury from having a full picture of the case. In response to

3

Shannon's argument, the state points out BS was still thoroughly cross-examined at trial regarding her recorded statement, as well as about several additional matters relating to the case. The state also argues Shannon tested the reliability of the recorded statement extensively during his cross-examination of BS and he has provided no evidentiary or procedural basis for his claim that the trial court erred in its rulings.

Under the Constitution, a criminal defendant has the right to present a defense. U.S. Const. amend. 6; La. Const. art. I, § 16; *Washington v. Texas*, 388 U.S. 14, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State v. Vigee*, 518 So. 2d 501 (La. 1988). Additionally, due process affords the defendant the right of full confrontation and cross-examination of the state's witnesses. *Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *State v. Mosby*, 595 So. 2d 1135 (La. 1992); *State v. Smith*, 54,489 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1108.

Shannon's cross-examination of BS expands to 118 pages of the record. During the course of this cross-examination, 39 objections were made by the state, 21 of which were either overruled or were directed by the trial court to be rephrased. The other 18 objections were sustained by the trial court for various reasons including, but not limited to: (1) the question had already been asked and answered, (2) the question was a repeat or vague question, (3) the question was irrelevant, or (4) the question was speculative. In brief, Shannon refers to nine of these rulings but does not enunciate how any of them were wrong.

Our review of this lengthy cross-examination reveals Shannon was given ample opportunity for a sufficient and complete cross-examination of BS. While we recognize the state did make many objections during the

4

cross-examination, we note the trial court handled each one on an individualized basis, overruling more than half of them, and there was a proper basis for the sustained objections. Notably, trial counsel's repeated references to the police report were properly excluded; police reports are expressly excluded from the public records exception to the hearsay rule, La. C.E. art. 803(8)(b)(i). *State v. Moran*, 47,804 (La. App. 2 Cir. 4/10/13), 135 So. 3d 677, *writ denied*, 13-1052 (La. 11/15/13), 125 So. 3d 1101. In sustaining many of the objections, the trial court specifically articulated its reasoning for its rulings or directed Shannon to rephrase his question. Further, on multiple occasions, the trial court allowed Shannon to restate his question instead of sustaining the state's objections.

At oral argument, Shannon also claimed the court's rulings prevented him from asking the best, most probing question to expose inconsistencies between BS's videoed statement and her testimony. While alternative defense strategies may often appear superior in retrospect, we do not find the court's rulings denied Shannon's constitutional right of confrontation and cross-examination or prevented him from submitting a defense.

We find Shannon was given more than ample opportunity to fully cross-examine BS and submit a defense to the jury. This assignment of error is without merit.

### ERROR PATENT

Our review of the record reveals the trial court did not order Shannon's sentences to be served at hard labor, although both offenses are necessarily punishable at hard labor. La. R.S. 14:42; La. R.S. 14:44.1. While the minutes reflect Shannon's sentence for second degree kidnapping is to be served at hard labor, the transcript of the sentencing hearing itself

5

reflects the trial court did not specify that either sentence have this designation. The trial court's failure to specifically state on the record Shannon's sentences were to be served at hard labor renders the sentences illegally lenient. *State v. Martinez*, 52,882 (La. App. 2 Cir. 8/14/19), 278 So. 3d 467; *State v. Thomas*, 52,617 (La. App. 2 Cir. 5/22/19), 272 So. 3d 999, *writ denied*, 19-01045 (La. 2/10/20), 292 So. 3d 61. However, because both first degree rape and second degree kidnapping require any sentence to be served at hard labor, the error is self-correcting. *Id.* Consequently, both of Shannon's sentences shall be served at hard labor.

## CONCLUSION

For the reasons expressed, we affirm Doyle Shannon's convictions and sentences, and note both sentences shall be served at hard labor.

**AFFIRMED.**