Judgment rendered May 22, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,688-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

QUINCY DEWAYNE ROBINSON            Appellant

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 243,728

Honorable Douglas Stinson, Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Chad M. Ikerd

J. SCHUYLER MARVIN                          Counsel for Appellee
District Attorney

RICHARD RAY
CHANCELLOR NERREN
CODY BOYD
Assistant District Attorneys

* * * * *

Before STONE, MARCOTTE, and ELLENDER, JJ.

MARCOTTE, J.

This criminal appeal arises from the 26th Judicial District Court, Parish of Bossier, the Honorable Douglas Stinson presiding.  Defendant, Quincy Dewayne Robinson, was convicted of obscenity and sentenced to three years at hard labor, to run consecutively to his other sentences.  Defendant now appeals his conviction and sentence.  For the following reasons, Robinson's conviction and sentence are affirmed.

## FACTS AND PROCEDURAL HISTORY

On August 1, 2022, Robinson was charged by bill of information with obscenity, in violation of La. R.S. 14:106(A).  The offense occurred on April 5, 2022.  Robinson pled not guilty to the charge, and on May 8, 2023, a trial was held where the following evidence was adduced.

John Alan Dupree ("Off. Dupree"), a probation officer for the Division of Probation and Parole, testified that he worked in law enforcement for 27 years and worked primarily with sex offenders.[1]  On April 5, 2022, Off. Dupree met with Robinson at the Bossier Parish Maximum Facility ("Bossier Max"), the parish prison.  Off. Dupree identified Robinson in court.  Off. Dupree stated:

> While I was reading some paperwork to Mr. Robinson, as soon as he saw me come in, he became irate and started shouting obscenities, and when I was reading his paperwork to him, he kept hollering at me and telling me to suck his dick.  And when I looked, he had his penis stuck through the … little slot in the door, constantly telling me to suck his dick.

Off. Dupree testified that Robinson repeatedly attempted to throw what he believed to be urine on him as soon as he got close enough to

---

[1] Defense counsel objected and moved for a mistrial, arguing that Off. Dupree's testimony constituted the introduction of 404(B) other crimes evidence.  After a brief hearing outside the presence of the jury, the trial court overruled the objection and denied the motion for a mistrial.

defendant's cell.  Off. Dupree later said that he was unsure if the liquid was urine or "some other water."  Off. Dupree stated that during his entire encounter with Robinson, "[H]e shouted multiple obscenities and was telling me to … suck his dick."  Robinson exposed his genitals to Off. Dupree "for a period of time."  Off. Dupree stated that he stopped reading the paperwork to Robinson and began reading him his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and informed him that he was charging him with obscenity.

Robinson continued to shout obscenities at Off. Dupree.  Off. Dupree testified that he attempted to get surveillance video of the incident, but was informed that there was no video.  Off. Dupree stated that he did not consent to Robinson exposing his genitals to him or attempting to throw urine on him.  He stated that defendant's actions were intentional and directed at him and that he was offended by Robinson's actions.  He testified that there were sheriff's deputies and guards present who witnessed the incident.

Off. Dupree gave the following testimony on cross-examination.  He said that usually when visiting Bossier Max, he tells the facility workers who he wants to see and that person is brought to an interview room.  He stated that he did not know if that was a written policy or the way the jail normally operates.  Off. Dupree stated that Robinson was not brought to an interview room and he was told that Robinson had been combative and "they didn't want to bring him back out because they'd already had to deal with him."  He was told he could conduct his business with Robinson at his jail cell.  Off. Dupree said that he was not aware if it was normal for probation officers to go to the cell pods, but that he had been to the pods before.

2

Off. Dupree stated that he was aware that there were cameras in Robinson's cell pod, but he was unsure if they were directed at Robinson's cell. He did not ask about a video until he knew the case was going to trial, more than one year after the incident. After the alleged incident, no one told Off. Dupree that they saw what happened on video surveillance. When asked why he did not request the video earlier, Off. Dupree stated, "I just didn't."

Deputy Jessie Bearden ("Dep. Bearden") testified that he was working as a deputy for the Bossier Parish Sheriff's Office at Bossier Max on the date of the offense and he was familiar with Robinson. Off. Dupree was present to give Robinson some paperwork from probation and parole. Dep. Bearden stated that it was the usual prison policy to get inmates from their cell location and take them to an interview room to meet with their probation officer. He said that there were exceptions to that policy, such as when it was not safe to move an inmate.

Dep. Bearden said that Off. Dupree was escorted to Robinson's cell because Robinson was combative earlier that day and had a history of acting out, "so nobody wanted to go and fight him to get him from point A to point B." Dep. Bearden testified that Robinson was immediately belligerent upon seeing Off. Dupree enter the cell pod. Mr. Dupree began reading some paperwork to defendant, but Robinson yelled obscenities at him. Dep. Bearden testified that Robinson was "playing with his penis and sticking it through the door, yelling, pointing down, telling him that he could suck his dick multiple times." He stated that he was standing three to four feet from Robinson's cell door when this occurred.

3

Dep. Bearden testified that Robinson was yelling obscenities and sticking his penis through the food slot in the door and he told Dep. Bearden to step away from the door. He said that Robinson's hand came out of the door and liquid came out of his penis which he was holding in his hand. Dep. Dupree and Robinson continued to have a conversation, and defendant refused to sign his paperwork. Off. Dupree and Dep. Bearden then went to booking. Dep. Bearden stated that he did not open Robinson's cell or engage with him in any way in response to the incident. Dep. Bearden stated that Robinson was in a camera cell at the time of the offense, which he referred to as a "101 cell," so there would have been a video of his encounter with Off. Dupree.

The following testimony was elicited on cross-examination. Dep. Bearden stated that he could not explain why there was no video of the incident, but he did not work for the IT department at Bossier Max. He said that the prison was getting a new camera system at the time of the offense, so he was not able to say if the camera in Robinson's cell was operable on the date of the offense. Dep. Bearden testified that Off. Dupree was standing in front of Robinson's cell door speaking to him through the food port and he was standing approximately three feet to the right of Dep. Dupree, also facing the door. He stated that the cell doors were sealed except for the food slot. Dep. Bearden said that there were other cameras in the pod that would have captured the encounter on video, but he was unaware if they were working at the time. The state rested.

Robinson elected to testify in his own defense. He stated that he was placed in a 101 cell at Bossier Max because he got into an altercation. He said he was in a camera cell; there was a camera pointing at the front of his

cell and another in front of the dorm that also pointed directly at his cell. Robinson disputed Off. Dupree's and Dep. Bearden's testimony. He said that he did not recall either being in or near his cell.

Robinson gave the following testimony on cross-examination. He again stated that he did not remember anyone coming to his cell on April 5. He claimed that Dep. Bearden and Off. Dupree were lying. Defendant claimed that he spoke with Lieutenant Evans ("Lt. Evans") about getting a video of the incident, but was told that Bossier Max did not have video retention. He said that he asked his lawyer to get the video of the incident, but his attorney was unsuccessful in getting it. Robinson said that he did not subpoena any witnesses to verify his statement about getting a video.

Robinson said that he never exposed his genitals to Off. Dupree or threw urine on him. Robinson again claimed that Off. Dupree lied about what happened. Robinson pointed out that Dep. Bearden was present in the courtroom when Off. Dupree testified. Robinson said that he filed a lawsuit against the jail and he "had a tendency to write ARPs" and "it sticks and they dock their pay when it sticks."[2] He testified that he filed two ARPs against Dep. Bearden. When asked about proof of the ARPs he filed against Dep. Bearden, Robinson stated that they were in his jail cell, and he was unaware that the deputy would be testifying at trial, so that was why he did not bring them to court.

Robinson testified on redirect that, if given the opportunity, he could bring his ARPs and a copy of his lawsuit against the prison. Defense counsel, Mark Rogers, then moved to temporarily release Robinson, recess

_____

[2] "ARP" refers to "Administrative Review Procedure" or "Administrative Remedy Procedure," whereby inmates may file complaints about prison employees, etc.

5

the trial, and give Robinson an opportunity to return the next day to bring the evidence about which the state inquired. The following argument occurred outside the presence of the jury (verbatim):

THE COURT: Okay. Mr. Robinson has just stepped down. Mr. Rogers, your request is to recess the trial until tomorrow morning so additional evidence can be brought; is that correct?

MR. ROGERS: Yes, Your Honor.

THE COURT: Mr. Nerren, State's position?

MR. NERREN[3]: Oh, we would absolutely object, Your Honor. They've had just as much time as we have to prepare for this. If there was a lawsuit filed and ARPs filed against deputies that would've helped them to prove that these deputies and this officer are lying then they should've got that a long time ago. And, I – I mean, I think that it was made quite clear during cross-examination that that fact was known. So just because the testimony went into a direction where they now feel they need to bring something additional, it's – it's inappropriate. We didn't know anything about it. Nobody told us anything about it. It wasn't presented to us. And now he wants to bring it in order just to support something he may not have just made up.

THE COURT: Okay. Your response, Mr. Rogers?

MR. ROGERS: And, Your Honor, we don't have a crystal ball. I had no idea Mr. Nerren was gonna go into this area of questioning, it would become such an issue. Mr. Robinson is in jail. He has limited resources. He has a limited ability to bring things to and from his jail cell to the courtroom. He doesn't have free access. We don't have access to his – if we could recess for ten minutes or fifteen minutes for someone to bring it up here we would be able to do that instead. If it were earlier in the day I would ask for a temporary recess to try and do it during

---

[3] Mr. Nerren represented the state.

lunch or to give us an hour, but we're at the end of the day, Your Honor. That being said, I believe it's paramount for Mr. Robinson to be able to tell his side of the story. He has taken the stand. He has the documents he claimed to have. Mr. Nerren has impeached him thoroughly on not having those documents with him. That's an unfair advantage against an incarcerated individual. In order to try and at least balance the scale – scales of justice to make them a bit fair, I would like for Mr. Robinson to have an opportunity to get that paperwork, bring it in tomorrow, we would present that and then go from there. And then after that I don't think we have on the defense side any more witnesses to call in our case in chief. So, then we would go into closing arguments and be done.

THE COURT: Okay. Briefly?

MR. NERREN: I mean, Judge, the – the mode is not to get impeached and then decide you had evidence somewhere that you just now decide would help you out after your testimony. I mean, he's had – he – they claim he's got limited resources and limited access, but he knew he needed clothes he told – he told the court earlier he'd had them sitting there for a month. He said he had talked to Mr. Rogers and that [it] was clear that there was a lawsuit and all this other stuff filed. This is not, Mr. Robinson took the testimony this direction, not me. And so he knew he was gonna bring that up. He knew that that was his ace in the hole to try and prove that these guys were lying and then after he gets impeached he wants to present evidence.

THE COURT: Okay. Well, Mr. Rogers, it's kind of an out of ordinary request. Both sides announced ready for trial. Mr. Nerren's last argument I tend to agree with it, once someone's impeached you don't then recess the trial to give the other side the opportunity to combat that. And it's the normal order of trial and I'm not going to do that today. So I'm going to deny that request. We are not recessing the trial so that Mr. Robinson can

7

obtain any documents that may or may not exist. And I'll note your objection to my ruling for the record. Anything else? We ready to bring the jury back in?

….

MR. ROGERS: And, Your Honor, and again [on] behalf of Mr. Robinson we weren't aware that Deputy Bearden was gonna be called to testify at this point. Bearden was complete add on into this trial at the last minute. And I got, I think, some confirmation during the weekend from Mr. Boyd that they were gonna call him up there. We got a little prepared, we weren't sure what was gonna happen. It seems rather unfair that they bring Bearden in at the very last second to bolster Agent Dupree's testimony, and yet, Mr. Robinson who's incarcerated and indigent and – and has limited resources just to have this matter continued for one day to give him an opportunity to bring that evidence if it exists.

….

THE COURT: Well Mr. Rogers, I mean, to that I would say if the State presented their case and after your case, I mean, I wouldn't allow the State to recess to – to find additional evidence. Y'all both announced ready for trial. We've picked a jury. We've started the trial. He's testified. You said no further questions. And so, at – at this point, the normal order of trial is you are to call your next witness. I'm not going to recess it for either side to get additional information. That's just not the normal order for trial under Article 765 of the Code of Criminal Procedure. So that's – that's where I am. And again, I'll note your objection for the record.

The defense rested. The six-member jury returned a unanimous verdict of guilty as charged. The trial court ordered that a presentencing investigation report ("PSI") be prepared.

On May 17, 2023, Robinson filed a motion for a new trial claiming that the trial court erred in denying his motion for a mistrial based on the

8

introduction of other crimes evidence and erred in not recessing the trial so that he could retrieve paperwork from his cell. On May 18, 2023, the trial court denied the motion for a new trial.

On July 31, 2023, Robinson was sentenced. At the beginning of the sentencing hearing, the state indicated its intention to file a habitual offender bill at a later date. The trial court considered Robinson's extensive criminal history, including multiple arrests which did not result in convictions. He had a conviction for entering or remaining after being forbidden and another for unauthorized use of a motor vehicle, in which his probation was revoked and he was required to serve his 18-month sentence. He had charges for possession of marijuana in 2007, 2009, and 2021.

In 2010, Robinson pled guilty to second-degree kidnapping of a child and received a 10-year hard labor sentence. He was paroled for the charge, which was later revoked. In 2013, he received a six-month sentence for introducing contraband into a correctional facility. In 2019, he pled guilty to failure to complete sex offender notification. In 2021, he pled guilty to unauthorized entry of an inhabited dwelling and telephone harassment. In 2022, he had charges for battery of a correctional facility employee, resisting an officer with force or violence, battery of a police officer, and resisting arrest.

The trial court noted that Robinson had not done well with probation and parole in the past. The court stated that Robinson's social history showed that he was 35 years old and his mother had a substance abuse problem. He was raised by a friend of his late mother's and she saw to his basic needs. Robinson was the third of 13 siblings. Robinson completed 11th grade, did not graduate, but did obtain his GED. He was married with

twin daughters, and he had substance abuse problems. The court said that his criminal history and the fact that the instant offense was his fourth felony did not "leave the court with any slack" in sentencing him. He said that the victim in this case, Off. Dupree, was very offended by Robinson's actions.

The trial court sentenced Robinson to serve three years at hard labor, with credit for time served. The court said that his sentence was to run consecutively to another other sentence he was serving. Robinson was not advised of his appellate or post-conviction relief time limits. Robinson did not object to his sentence or file a motion to reconsider sentence. Robinson now appeals.

## DISCUSSION

*Insufficient Evidence*

Appellant's first assignment of error states that the evidence was insufficient to find that he committed the offense of obscenity. He claims that the state did not confirm through testing that the liquid he allegedly threw at Off. Dupree was urine. He notes that he was not charged with a battery for throwing the urine or assault for shouting obscenities at Off. Dupree. Robinson also argues that it was suspicious that Off. Dupree failed to secure the video recording of the incident for more than a year, given that he was housed in a camera cell.

Appellant claims that he did not know Dep. Bearden was going to testify until the morning of the trial. Robinson also complains that Dep. Bearden was not sequestered during Off. Dupree's testimony, allowing him to easily confirm the officer's testimony. Robinson states that the ARPs he filed against Dep. Bearden provided a reason for the deputy to lie in his testimony. Robinson said that coupled with the state threatening to file a

10

habitual offender bill against him, allowed Off. Dupree and Dep. Bearden a chance to get rid of someone who was a "troublemaker."

Appellee counters that the evidence was sufficient for the jury to determine that Robinson was guilty of obscenity. The state points out that two witnesses testified that defendant put his penis through the food slot in his cell door. Off. Dupree testified that Robinson's actions were directed at him and he was very offended by what defendant did. The state argues that the jury found the testimony of its two witnesses credible and compelling. The state claims it was only required to prove that Robinson exposed his genitals and that Off. Dupree found it offensive, which it did so in this case.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Hernandez*, 55,256 (La. App. 2 Cir. 8/9/23), 369 So. 3d 962. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517.

The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness. *State v. Higgins*, 03-1980 (La. 4/1/05), 898 So. 2d 1219, *cert. denied*, 546 U.S. 883, 126 S. Ct. 182, 163 L. Ed. 2d 187 (2005); *State v. Hernandez, supra*. When there is conflicting evidence about factual matters, the resolution of which

11

depends on a determination of the credibility of witnesses, the matter is one of the weight, not the sufficiency, of the evidence. *Tibbs v. Florida*, 457 U.S. 31, 102 S. Ct. 2211, 72 L. Ed. 2d 652 (1982); *State v. Hernandez, supra*.

La. R.S. 14:106(A)(1) provides that the crime of obscenity is the intentional exposure of the genitals, pubic hair, anus, vulva, or female breast nipples in any public place or place open to the public view, or in any prison or jail, with the intent of arousing sexual desire or which appeals to prurient interest or is patently offensive.

The state was only required to prove that Robinson exposed himself in any public place open to public view, or in any prison or jail, and that the exposure was patently offensive. Off. Dupree and Dep. Bearden testified that Robinson exposed his penis to Off. Dupree through the food slot in his cell door. Off. Dupree further testified that he found Robinson's actions offensive. The jury also heard Robinson's testimony denying that the incident occurred and that Dep. Bearden may have been biased toward him as a "troublemaker." It is within the discretion of the fact-finder to accept or disregard any witness's testimony. The jury was free to make credibility determinations regarding the evidence presented. Off. Dupree was cross-examined by defense counsel allowing the jury to hear that Robinson was in a camera cell and that he did not attempt to get any video of the incident that might have existed until nearly a year later.

Robinson complains that Dep. Bearden was allowed to remain in court during Off. Dupree's testimony, allowing him to more easily corroborate the probation officer's testimony with his own. It was incumbent upon Robinson to request that Dep. Bearden be sequestered to

12

prevent that from happening, but he did not do so. Robinson's complaint that he was unaware that Dep. Bearden was going to testify until the day of trial is addressed in defendant's third assignment of error. This assignment of error lacks merit, and Robinson's conviction is affirmed.

*Excessive Sentence*

Robinson's second assignment of error states that the trial court erred in sentencing him to a three-year sentence to run consecutively to any other sentence he is required to serve. Robinson argues that he is not the worst offender; he did not expose himself to a child or female deputy. He argues that Off. Dupree was trained in dealing with sex offenders and it is "realistic to believe he is not as sensitive to being 'offended' by a sex crime as the average person."

Robinson also argues that his jail cell is his home, and that the larger context of where he was at the time of the offense should be considered. He argued that throwing urine was not relevant to the facts regarding the obscenity charge because the act of obscenity was exposing his penis. Robinson said that Off. Dupree continued to read paperwork to him while he was yelling obscenities and exposing his penis, and it was only after water or urine was thrown in his direction that he decided to charge Robinson with a crime.

Appellee contends that Robinson's three-year, consecutive sentence is not constitutionally excessive. The state argues that the sentence was within the discretion of the trial court, which had the benefit of reviewing Robinson's PSI. The trial court also considered the guidelines found in La. C. Cr. P. art. 894.1, and the sentence was within the statutory range for the offense. The state indicates that the trial court used the correct sentencing

13

range for Robinson, found in La. R.S. 14:106(G)(1). The state directs this court's attention to the emphasis the trial court placed on Robinson's extensive criminal history in sentencing him and the fact that he had his probation or parole revoked on more than one occasion.

Failure to make or file a motion to reconsider sentence or to include the specific grounds upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review. La. C. Cr. P. art. 881.1(E).

When, as in this case, a defendant fails to make a motion to reconsider sentence, the appellate court's review of the sentence is limited to a bare claim of constitutional excessiveness. *State v. Mims*, 619 So. 2d 1059 (La. 1993); *State v. Brass*, 55,265 (La. App. 2 Cir. 9/27/23), 372 So. 3d 386, *writ denied*, 23-01423 (La. 4/3/24), __ So. 3d __, 2024 WL 1431245. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So. 2d 1; *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Brass, supra*. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in the light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Brass*, *supra*.

If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court

14

expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. La. C. Cr. P. art. 883.

It is within the court's discretion to make sentences consecutive rather than concurrent. *State v. Jackson*, 53,976 (La. App. 2 Cir. 6/30/21), 321 So. 3d 547; *State v. Robinson*, 49,677 (La. App. 2 Cir. 4/15/15), 163 So. 3d 829, *writ denied*, 15-0924 (La. 4/15/16), 191 So. 3d 1034. For example, the sentencing court may impose consecutive sentences in cases where the offender's past criminality or other circumstances justify treating him as a grave risk to the safety of the community. *State v. Walker*, 00-3200 (La. 10/12/01), 799 So. 2d 461.

The trial court was under no obligation to justify imposing a sentence upon Robinson that was to run consecutive to any prior sentence he was required to serve, because the offenses were not based on the same act. *State v. Gilcrease*, 54,905 (La. App. 2 Cir. 11/30/22), 352 So. 3d 153, *writ denied*, 22-01845 (La. 5/31/23), 361 So. 3d 467, *cert. denied*, __ U.S. __, 144 S. Ct. 306, __ L. Ed. 2d __ (2023).

The trial court has wide discretion to impose a sentence within the statutory limits, and the sentence imposed will not be set aside as excessive absent a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Gilcrease, supra*. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *Id*.

On a first conviction, whoever commits the crime of obscenity shall be fined not less than one thousand dollars nor more than two thousand five

15

hundred dollars, or imprisoned, with or without hard labor, for not less than six months nor more than three years, or both. La. R.S. 14:106(G)(1).

While the trial court did not mention La. C. Cr. P. art. 894.1, it still completed an 894.1 analysis. The trial court here found Robinson's criminal history particularly concerning. Robinson was already imprisoned when he committed the instant offense. He had prior and recent charges for battery of a correctional facility employee and battery of a police officer. He is also a registered sex offender and his obscenity conviction is his fourth felony. The trial court mentioned Robinson's age, social history, and the fact that he is married with two children.

Robinson exposed his genitals to Off. Dupree when he visited his cell. He used offensive language when speaking to the officer, and he apparently attempted to urinate on Off. Dupree. His argument that Off. Dupree worked with sex offenders as a probation officer, therefore he was desensitized to offensive acts, such as the instant offense, is absurd. Also, the fact that Robinson resided at the jail is immaterial, as La. R.S. 14:106 explicitly states that public exposure includes exposure that occurs in a prison or jail.

Given those facts and Robinson's extensive criminal history, we do not find that Robinson's sentence of three years shocks the sense of justice or is disproportionate to his crime. We note that the trial court did not impose the maximum sentence here, because it was within the court's discretion to levy a fine upon Robinson of up to $2,500 in addition to his three-year term.

We also do not find that the trial court erred in sentencing Robinson to a sentence that was consecutive to any other sentence he was serving; it was within the trial court's discretion to do so. His offense of obscenity was an

16

isolated offense and was not based on any prior offense he committed. This assignment of error lacks merit and Robinson's sentence should be affirmed.

*Motion to Recess the Trial*

In Robinson's third assignment of error he claims that the trial court erred in denying his motion to recess the trial so that he could retrieve copies of his lawsuit and/or ARPs to demonstrate the bias of Dep. Bearden. Robinson claims that the state opened the door by asking for proof of the witness' bias. The state then attacked Robinson's credibility, arguing such paperwork did not exist. Robinson argues that the defense was not aware that Dep. Bearden was going to testify until the morning of the trial, which did not allow him time to return to his cell to retrieve the documents he needed. He states that he did not anticipate needing proof of Dep. Bearden's bias because the deputy did not come forward with his account of events until a year later. Robinson argues he was denied a fair trial. He asks this court to overturn his conviction and sentence.

Appellee argues it was within the discretion of the trial court to grant defendant a continuance to allow him to retrieve paperwork from his cell. The state contends that a conviction will not be reversed even on a showing of an improper denial of a motion for a continuance absent a showing of specific prejudice. The state asks this court to affirm defendant's conviction and sentence.

Here, Robinson moved to recess his trial to allow him to retrieve documents showing Dep. Bearden's potential bias. A continuance is the postponement of a scheduled trial or hearing, and shall not be granted after the trial or hearing has commenced, and a recess is a temporary adjournment of a trial or hearing that occurs after a trial or hearing has commenced. La.

17

C. Cr. P. art. 708. A motion for recess is evaluated by the same standards as a motion for a continuance. *State v. Arabie*, 07-806 (La. App. 5 Cir. 3/11/08), 982 So. 2d 136, *writ denied*, 08-0928 (La. 11/21/08), 996 So. 2d 1104. A ruling to grant or deny a motion for continuance is within the sound discretion of the trial court and a reviewing court will not disturb it absent a clear abuse of discretion. *State v. Pettit*, 54,736, (La. App. 2 Cir. 1/11/23), 354 So. 3d 784.

An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C. Cr. P. art. 841(A). In order to preserve an issue for appellate review, a party must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for the objection. *State v. Mays*, 54,251 (La. App. 2 Cir. 5/25/22), 338 So. 3d 1279, *writ denied*, 22-01000 (La. 10/4/22), 347 So. 3d 895. If no objection is made in the trial court, any error committed therein is not preserved for appellate review. *Id.*; *State v. Lloyd*, 48,914 (La. App. 2 Cir. 1/14/15), 161 So. 3d 879, *writ denied*, 15-0307 (La. 11/30/15), 184 So. 3d 33.

It was within the discretion of the trial court to deny Robinson's motion to recess the trial so that he might retrieve paperwork from his cell. Robinson and his counsel were aware of when his trial was occurring, and they were given ample opportunity to prepare. Both sides announced that they were ready for trial. It was only when the state challenged Robinson on his claims of having evidence of Dep. Bearden's bias that he sought to introduce copies of the ARPs he filed against the deputy, which he claimed were located in his cell. We agree with the trial court's viewpoint that once a witness is impeached, one side is not then allowed to recess the trial to

18

retrieve information to counter the impeachment. That paperwork should have been retrieved prior to trial and the trial court did not err in denying the motion to recess the trial.

Robinson claims that he was unaware that Dep. Bearden intended to testify until the morning of the trial. Defense counsel, during the bench conference regarding the motion to recess, stated he had not received notice that Dep. Bearden was going to testify until the day of trial. However, defense counsel then said that he received some notice over the previous weekend that the deputy would testify. The record shows that Robinson did not complain about the allegedly late addition of Dep. Bearden as a witness until the bench conference regarding the motion to recess the trial, which occurred during his testimony and after the deputy had already testified. There was no contemporaneous objection to Dep. Bearden's testimony; therefore, the issue was not preserved for appeal. This assignment of error lacks merit, and Robinson's conviction and sentence should be affirmed.

*Error Patent Review*

The record was reviewed for errors patent and one was found. At sentencing, the trial court failed to advise defendant of the time period within which to apply for post-conviction relief. We now advise him by this opinion that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. arts. 914 or 922.

**CONCLUSION**

For the foregoing reasons, Quincy Dewayne Robinson's conviction and sentence are affirmed.

**AFFIRMED.**